Clay **CALHOUN** and Sybil Calhoun, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 23282.

United States Court of Appeals Fifth Circuit.

July 19, 1967.

Ernest A. Carrere, Jr., New Orleans, La., George E. Morse, Gulfport, Miss., Walter J. Phillips, Bay St. Louis, Miss., for appellants.

Robert E. Hauberg, U. S. Atty., E. R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Elizabeth Dudley, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before GEWIN and AINSWORTH, Circuit Judges, and HUNTER, District Judge.

GEWIN, Circuit Judge.

The United States instituted this proceeding in the United States District Court for the Southern District of Mississippi to condemn certain estates in land in Hancock County, Mississippi, for use in connection with the National Aeronautics and Space Administration's Mississippi Test Facility. The fee simple title to 336.65 acres was taken and a perpetual and assignable easement was taken in 2,094.78 acres of which 2,064.60 acres belong to Clay and Sybil Calhoun. The jury returned a verdict of $175,-000.00 as just compensation for the Government's easement in the acreage owned by the Calhouns, and they appeal from

the order of the district court confirming the jury's verdict.

Contrary to the mandate of The Court Reporters Act, 28 U.S.C. § 753(b),[1] the court reporter failed to record the closing arguments of counsel before the jury. From our review of the record we find that appellants are prejudiced by the failure of the reporter to transcribe the entire proceedings and that the record, though incomplete, is sufficient to demonstrate prejudicial error with respect to the argument of Government counsel. Therefore, we reverse and remand the case to the district court for a new trial.

The estate taken by the Government from appellants was as follows:

" * * * a perpetual and assignable easement for the establishment, maintenance, operation and use of a restricted area in, on, across and over the land hereinafter described as Tracts 118–E, * * *, consisting of the right to prohibit human habitation or human occupancy of dwellings, and other buildings susceptible of being used for human habitation or human occupancy; together with all right, title, and interest in and to the dwellings and other buildings now situated on the tracts last above specified and which are susceptible of being used for human habitation or human occupancy, including the right to demolish, remove, relocate, or lease in place said dwellings and other buildings, the right to post signs indicating the nature and extent of the Government's control; and the right of ingress and egress over and across said land for the purpose of exercising the rights set forth herein; subject, however, to existing easements for public roads and highways, public utilities, railroads, and pipelines, reserving, however, to the landowners, their heirs, executors, administrators, successors (if corporate owner) and assigns all right, title, interest and privilege as may be used and enjoyed without interfering with or abridging the rights, title, and interest hereby taken for said public uses."

Appellants' property has approximately 30,200 feet of water frontage on the Catahoula Creek and the Jordan River. Appellants maintained their home on the property and over the years had been constantly improving the land.

Mr. Calhoun testified he had purchased the land in 1954–55 for investment purposes. For the first five years he had tried to maintain the land as a farm. When this proved unprofitable he decided to subdivide it into five and ten acre plots and in 1959 had plans drawn for that purpose. Appellants decided to delay putting these plots on the market for sale

[1]. Pertinent portions of § 753(b) provide as follows:

"(b) One of the reporters appointed for each such court shall attend at each session of the court and at every other proceeding designated by rule or order of the court or by one of the judges, and shall record verbatim by shorthand or by mechanical means which may be augmented by electronic sound recording subject to regulations promulgated by the Judicial Conference: (1) all proceedings in criminal cases had in open court; (2) all proceedings in other cases had in open court unless the parties with the approval of the judge shall agree specifically to the contrary; * * *."

"The reporter shall attach his official certificate to the original shorthand notes or other original records so taken and promptly file them with the clerk who shall preserve them in the public records of the court for not less than ten years."

*      *      *      *      *

"Upon the request of any party to any proceeding which has been so recorded who has agreed to pay the fee therefor, or of a judge of the court, the reporter shall promptly transcribe the original records of the requested parts of the proceedings and attach to the transcript his official certificate, and deliver the same to the party or judge making the request."

Compliance or failure to comply with the requirements of 28 U.S.C. § 753(b) has been the subject of comment by the Administrative Office of the United States Courts in its review of the reports of examiners of the Department of Justice with respect to court reporters.

until the Texas Flat Road on which the property had frontage was blacktopped. Also the delay in selling the plots was occasioned by the fact that Mr. Calhoun knew that proposed interstate highway I-10 would pass near his property which, when completed, would enhance its value. Appellants' property also contained valuable silica deposits. Before the Government announced its taking of the land, Mr. Calhoun had begun negotiations with nearby plants for the production and marketing of silica.

The only issue before the court and jury was the just compensation due appellants for the taking of the easement. Such determination is made by calculating the difference in the value of the property before the taking and the value of it after the taking of the easement.

The appellants presented three appraisers [2] who testified that the highest and best use for the property before the imposition of the easement was for subdivision development and afterward it could be used for nothing but growing timber. Two of the appellants' appraisers, who worked together, valued the property before the taking at $915,816 and the other at $765,000, and after the taking at figures ranging from $63,056 to $98,000, thereby concluding that appellants had been damaged in various amounts, the lowest being $667,000 and the highest $853,000. The Government presented only one appraiser who testified that the value of the property before the easement was $325,000 and after, $190,000, the difference being $134,000. As stated, the jury returned a verdict of $175,000.

In their specifications of error the appellants contend that the district court erred as follows: (1) refusing to permit appellants to obtain documentary evidence by means of a return on a sub-poena duces tecum, (2) refusing to permit appellants to testify regarding cancellation of a long term mortgage and their inability to mortgage the subject property due to the imposition of the easement, (3) refusing to give appellants' Requested Charges No. 4 and 5 concerning the nature and affect of the easement in question, (4) the jury verdict was capricious, arbitrary and in total disregard of the evidence and should have been set aside, (5) the district court made statements prejudicial to appellants' interest, and (6) the Assistant United States Attorney made inflammatory statements prejudicial to appellants' interest.

Since we must reverse the case and remand for a new trial on the ground that the failure of the court reporter to report the closing oral arguments of counsel is prejudicial to appellants, it is not necessary for us to rule on all of the above specifications of error. However, our decision does require a discussion of appellants' last specification of error that Government counsel made inflammatory and prejudicial remarks in his closing argument.

■ The Court Reporters Act, 28 U.S.C. § 753(b) requires the official court reporter to record verbatim by shorthand or by mechanical means all proceedings in civil cases had in open court unless the parties specifically agree otherwise. The requirements of this statute are mandatory, not permissive. Washington v. United States, 327 F.2d 793 (5 Cir. 1964); Strauss v. United States, 311 F.2d 926 (5 Cir. 1963); Parrott v. United States, 314 F.2d 46 (10 Cir. 1963); Fowler v. United States, 310 F.2d 66 (5 Cir. 1962); Stansbury v. United States, 219 F.2d 165 (5 Cir. 1955). For some unexplained reason the closing arguments of counsel were not taken

---

2. One appraiser did not see the property before the improvements were changed or removed and therefore could not value the property before the imposition of the easement. Nevertheless he was permitted to testify as to the value of appellants' property with the easement.

Appellants actually presented a fourth appraiser who did not testify. It was stipulated by counsel that if this fourth appraiser testified, he would concur in the appraisal report of Mr. Turner who had already presented his evaluation to the jury.

down in shorthand by the court reporter, recorded in tape, or recorded in any other manner. Such failure to record is a clear violation of the statutory mandate.

■ Failure to transcribe the entire court proceedings in violation of the statutory requirement is not reversible error per se. Therefore, where no claim is made that there is an error in the omitted portions of the record, failure to transcribe such portion is not prejudicial as to require reversal. Burns v. United States, 323 F.2d 269 (5 Cir. 1963); Strauss v. United States, supra; Murphy et al. v. St. Paul Fire & Marine Ins. Co., 314 F.2d 30 (5 Cir. 1963); Addison v. United States, 317 F.2d 808 (5 Cir. 1963).

■ But where the appellant does contend that errors were made, he may be prejudiced by the lack of a complete record in that the reviewing court may be unable to rule on the claimed errors. In such circumstances the failure to record may constitute adequate grounds for reversal and the ordering of a new trial. Washington v. United States, 327 F.2d 793 (5 Cir. 1964); Parrott v. United States, 314 F.2d 46 (10 Cir. 1963); Fowler v. United States, 310 F.2d 66, 67 (5 Cir. 1962); Stephens v. United States, 289 F.2d 308 (5 Cir. 1962).

■ In the instant case the appellants contend that the Assistant United States Attorney made inflammatory and prejudicial remarks during his closing argument. Although the closing arguments are not contained in the record, one statement is referred to in the record as having been made by the Government attorney on oral argument. After the district court charged the jury, the court asked counsel if they desired any additional instructions. At this time counsel for appellants asserted to the court that Government counsel had made the statement, "Let's don't give all the money to people from Louisiana and lawyers from Louisiana, let's save some money for the people in Mississippi," and requested the court to instruct the jury "that Mr. Calhoun is to be given the same or identical consideration as would a citizen of the State of Mississippi." The court refused to give the requested charge, noting that no objection had been made and that the requested instruction was academic and without any benefit or advantage.[3] We do not agree that such a statement is purely academic and that the instruction would not have been beneficial to the appellants. We take note of the observation by the trial court that no objection to the argument was interposed at the time it was made. Perhaps such procedure would have been better, but we do not believe that immediate objection is the only way to raise the question here presented. Cf. Viereck v. United States, 318 U.S. 236, 248, 63 S.Ct. 561, 87 L.Ed. 734, 741 (1943). The objection was brought to the attention of the trial court in ample time to allow the court to give a remedial and corrective instruction to the jury.

In this hotly contested case we are convinced that the statement complained of by appellants was highly improper and extremely prejudicial. Even though the record of the proceedings is not complete, we are convinced that it does show that the quoted statement was made by the District Attorney. It does not appear that the District Attorney ever denied having made the statement. There is no showing that it was provoked by anything said or done by the appellants or their counsel. There is nothing to indicate that the district court entertained any doubt whatever about the fact that the highly inflammatory remark was made. Indeed, the court was apparently aware that the statement was made but consid-

---

3. The appellants' motion for a new trial was also based in part on alleged prejudicial statements by the Government attorney during closing argument. In denying the motion the court stated that the argument of the United States Attorney was not inflammatory in nature, that no objection had been made to the statements by the attorney, that the jury was asked on voir dire as to whether or not the residence of the defendant would effect their decision and each of them answered in the negative.

ered it to be non-inflammatory and harmless. No explanation of the statement or justification for making it was offered by the District Attorney.

█ The very purpose and foundation of every court system is to provide a judiciary where cases can be tried free of bias and prejudice. The federal judicial system is particularly designed to avoid *local* bias and prejudice. See Wright, Federal Courts, 64–5 (1963). While this is not a diversity case, the diversity jurisdiction of federal courts is grounded in large measure on this very principle. An appeal to local prejudice in a United States District Court in an effort to reduce the award of damages in a case of this nature where the Government is the moving party in taking a valuable estate in the land of the appellants under the power of eminent domain, one of the most summary proceedings known to the law, is contrary to every concept of justice and fairplay. Indeed, the only issue to be decided by the jury was that of just compensation. The property had been taken by the sovereign long before the jury was brought into the case. The statement in question goes to the very heart of the only issue which the jury was to decide. For that reason, in addition to others, such a statement violates every concept of justice and fairness.

█ Rule 75(c) and (d) of the Federal Rules of Civil Procedure outlines a method whereby a trial record may be corrected or supplemented. Generally, such rule states that if a portion of the record is omitted, the appellant may prepare a statement of the evidence or proceedings, and this statement together with any objections or amendments of the appellee is submitted to the district court for settlement and approval. After oral argument before us, the appellants filed a motion to correct the record pursuant to the above rule. The Government contends that the negligence of the appellants in failing to follow such procedure earlier should preclude them from doing so now, and further, that since

the record is not complete the alleged error with respect to the jury argument can not be considered in this Court. We disagree, and conclude that the record in its present form is sufficient to permit us to pass on the jury argument issue. See Jaconski v. Avisun Corp., 359 F.2d 931 (3 Cir. 1966). Moreover, the Government contends that "it would tax the memory of any one at this time to remember what was said in oral argument." It is entirely likely that it would be extremely difficult to reconstruct the oral argument and have the record supplemented.

█ Rule 75 speaks of a procedure to settle differences between the parties as to what happened at the trial when there is no transcript of the proceedings available. It provides that "the difference shall be submitted to and settled by the court and the record made to conform to the truth." As indicated earlier we do not consider such procedure necessary in this case. Even though the record is not complete, it is sufficient to convince us that the improper statement was made and that harm and prejudice to the appellants resulted. The record does not disclose that any "difference" has arisen as to whether the record truly discloses what occurred in the district court. What occurred with respect to the question before us is tacitly if not actually admitted by all concerned. Our decisions in *Addison* and *Murphy*, supra, are not apposite here. The facts here are clearly distinguishable from the facts in those two cases. In those cases the court considered the record insufficient to allow the court to pass on the errors claimed and that a failure to comply with the Court Reporters Act was not error per se. As stated, we consider the record before us sufficient to adequately present the question to be decided.

We are firm in our conclusion that the fairest and most expedient procedure to follow in this case is to reverse the judgment and remand the case for a new trial.

Reversed and remanded.