BERGERCO, U.S.A., Plaintiff–Appellant,

v.

The SHIPPING CORPORATION OF IN-
DIA, LIMITED, Defendant–Appellee.

No. 86–2339.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1989.

Decided Feb. 26, 1990.

David C. Phillips, Goldstein & Phillips, San Francisco, Cal., B.E. Bergesen III, Berkeley, Cal., for plaintiff-appellant.

D. Thomas McCune, Lillick and Charles, San Francisco, Cal., for defendant-appellee.

Before POOLE, REINHARDT and O'SCANNLAIN, Circuit Judges.

POOLE, Circuit Judge:

Bergerco, USA (Bergerco), an agricultural commodities broker, sued The Shipping Corporation of India, Limited (SCI), for breach of a contract for the shipment of goods. After a one day bench trial, the district court held that defendant had breached the contract by delaying shipment, but limited plaintiff's recovery to the diminution in the value of the goods caused by the delay. When Bergerco was unable to prove any diminution in value, the court entered judgment for SCI. The court reporter subsequently lost his notes of trial, and Bergerco attempted to reconstruct the record pursuant to Federal Rule of Appellate Procedure 10(c). On appeal, Bergerco seeks either reversal of the district court judgment denying consequential damages or a remand because of the inadequacy of the district court's reconstruction of the missing transcript.

## I. FACTS AND PRIOR PROCEEDINGS

On September 15, 1978, Bergerco agreed to sell 11,000 bags of peas to Vegoils, Ltd, an Indian corporation. The contract between Bergerco and Vegoils was specifically conditioned on the peas being shipped nonstop from New Orleans to Bombay. Bergerco then contracted with SCI to ship the peas from New Orleans to Bombay aboard the vessel Visha Shoba without making any intermediate stops.

While the vessel was en route to Bombay, Vegoils learned that it had made some intermediate stops. Vegoils immediately notified Bergerco that it was rejecting the goods and demanded repayment. The peas eventually reached Bombay one week later than expected. They were sold by Vegoils at a distress sale for 50% of their cost and the proceeds were credited to Bergerco's account. Pursuant to the terms of their agreement, the dispute between Vegoils and Bergerco was submitted to arbitration in London, which eventually resulted in an award of $121,990.84 to Vegoils.

Alleging that SCI had breached its promise to ship the goods nonstop, Bergerco sued SCI in the district court under 28 U.S.C. § 1333, which grants jurisdiction over admiralty and maritime cases. On April 18, 1983, a one day bench trial was held on the issue of liability. Closing arguments were made on April 21. The district court held that Bergerco had contracted for

**1212**

nonstop shipment of the goods, and that SCI's agents clearly understood that plaintiff wanted the voyage to be nonstop. However, it found that at the time the contract was made, SCI could not have foreseen that the buyer, Vegoils, would refuse the goods if the ship made four intermediate stops. Concluding that the loss of the Vegoils' contract was not foreseeable, the court limited plaintiff's damages to the diminished value of the cargo attributable to the one week delay.

In March 1985, the parties stipulated to evidence regarding the calculation of damages. Bergerco indicated that the market for peas in India was such that it was impossible to prove diminution of value over a one week period. It offered instead evidence of the London arbitration award requiring it to pay Vegoils $121,990.84. SCI objected to this evidence as irrelevant and the court sustained the objection on the grounds that the plaintiff was not entitled to consequential damages where the injury was not foreseeable. Because Bergerco was unable to prove any diminution in value of the goods, the district court concluded that the damage resulting from the breach of contract was zero and on July 1, 1986 it entered final judgment for SCI.

After plaintiff filed a timely notice of appeal, the court reporter informed counsel that his notes for the trial held on April 18, 1983 had been lost. Bergerco filed a statement of the evidence with the district court pursuant to Rule 10(c), Fed.R.App.P. SCI made objections and the court held a hearing on December 18, 1987 to settle the matter. After making several changes in the plaintiff's original statement, the district court approved the statement of the evidence as a part of the record on appeal. Bergerco disputes the changes made by the district court and asks us either to remand for a retrial or to accept its version of the facts and reverse the district court's conclusion on the foreseeability of damages. We have jurisdiction over this appeal from a final judgment of the district court. 28 U.S.C. § 1291.

## II. FORESEEABILITY OF DAMAGES

The basic legal principle for determining damages in a breach of contract case is undisputed: the plaintiff can only recover those damages which the breaching party had reason to foresee at the time of entering into the agreement. *5 Corbin on Contracts*, §§ 1007–8. Based on the evidence presented at trial, the district court concluded that SCI could not have foreseen that Vegoils would reject the goods because the vessel made four intermediate stops resulting in a one week delay. Bergerco urges us to review this conclusion *de novo* because the foreseeability of damages is a mixed question of law and fact.

We held in *United States v. McConney* that *de novo* review is usually appropriate for decisions applying a rule of law to the facts. 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). However, we noted that a clearly erroneous standard of review is more appropriate for certain types of mixed questions. Where the legal standard calls for a "strictly factual test," for example, state of mind, "the application of law to fact ... involves an 'essentially factual' inquiry" which warrants deference to the trial court's decision. *Id.* at 1203 (citation omitted). In this case we must decide what damages were "reasonably foreseeable" at the time the agreement was formed, a determination which primarily depends on what the parties said, did and understood when making the contract. We conclude that the foreseeability of a certain type of damage is the sort of "essentially factual" inquiry which should be reviewed under the clearly erroneous standard.

Under the clearly erroneous standard of review, we will not disturb a district court's conclusions unless "left with the definite and firm conviction that a mistake has been committed" upon reviewing the evidence as a whole. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In this case, however, we are faced with the additional difficulty of deciding *what* evidence to review because the lack of a transcript has created uncertainty as to what actually

happened during the trial. Before addressing Bergerco's argument that the loss of the Vegoils' contract was foreseeable, we must first consider its claims regarding the evidence presented at trial.

## III. APPELLANT'S CHALLENGE OF THE EVIDENCE

Bergerco contends that the district court's approved statement of the evidence is inadequate and does not fairly represent what happened at trial. It asks us either to accept its (Bergerco's) version of the facts or to remand for a retrial on the disputed factual issues. We first inquire whether the disputed evidence is material to the issue of foreseeability. We need not decide which of the two versions of the evidence is most accurate unless the choice might affect our review of the district court's finding on the foreseeability of damages.

### A. *The Disputed Evidence*

After the trial transcript was lost, Bergerco prepared a statement of the evidence which had been presented at trial. The statement described the parties and the nature of the agreement between them and summarized the testimony of two witnesses. One of the witnesses, Elise R. Gross, an officer and employee of Bergerco, was responsible for arranging shipment of the cargo. She testified about her conversations with Ray Holmes, an employee of Norton, Lilly, the booking agent for SCI. After considering SCI's objections, the district court made the following three changes in the statement of the evidence proposed by Bergerco:

1. The court omitted a sentence which stated that

As a result of the intermediate stops, and nothing else, Vegoils refused to accept the goods, claiming that Bergerco had breached the contract.

2. The court omitted the following sentences:

Ms. Gross pointed out to Mr. Holmes that the letter of credit ... for the

cargo required that the vessel sail directly from the port of loading to Bombay for unloading without calling at any other port for loading/unloading, that a condition of booking the goods on a vessel represented by Norton, Lilly was that the sailing be direct, nonstop, and further that without a certificate from the carrier that the vessel had carried the goods direct and nonstop, payment to Bergerco by Vegoils would not be made.

and replaced them with:

Gross, as the representative of Bergerco, contracted for a direct, nonstop voyage from New Orleans to Bombay, and Holmes as the representative of Norton, Lilly, understood that the contract called for a direct, non-stop voyage.

3. The court omitted the following:

Solely as a result of the breach of the booking agreement, Vegoils refused to accept the goods and invoked arbitration in London under the provisions of the Bergerco/Vegoils contract. The London arbitration resulted in an award in favor of Vegoils and against Bergerco, which was subsequently affirmed on appeal. (citations omitted) Bergerco paid Vegoils $121,990.84 in satisfaction of the award.

Bergerco contends that these three changes are material and have prejudiced its case on appeal.

### B. *Materiality of Disputed Evidence*

We do not view the first and third changes made by the district court, embracing certain conclusions, as material to the issue of foreseeability. Both of the omitted passages include conclusions that Vegoils rejected the goods "solely as a result" of SCI's breach.[1] However, Vegoils' actual reasons are irrelevant in determining the foreseeability of Vegoils' rejection of the goods because of the intermediate stops except insofar as the evidence would independently generate the inference that the carrier was thereby on notice of the effect

---

1. It is unclear how evidence of Vegoils' reasons for rejecting the goods could have been admitted at the trial, since no representative of Vegoils was present to testify.

of delay upon the consignee. Similarly, even if Bergerco is correct that evidence of the London arbitration award was presented at trial, this evidence does not have any effect on the issue of foreseeability of Bergerco's loss.

If only the first and third changes were disputed, we would see no need to resolve the conflict between the two differing accounts of the evidence at trial. However, the second alteration made by the district court is relevant to determining the foreseeability of Bergerco's loss. While the district court's approved statement of the evidence acknowledges that the parties contracted for a nonstop voyage, Bergerco claims that Ms. Gross also testified that she had informed Mr. Holmes of the precise terms of the Bergerco–Vegoils contract and told him that unless the voyage was nonstop, Bergerco would not be paid. Because such testimony, if in fact it was given at trial, might materially affect our review of the district court's finding on the foreseeability of damages, we must consider Bergerco's challenge to the district court's approved statement of the evidence.

## C. *Conclusiveness of Rule 10(c) Proceedings*

■ SCI asserts that a district court's settlement of the evidence is not subject to attack on appeal, citing *Buick v. United States*, 396 F.2d 912 (9th Cir.1968), *cert. denied*, 393 U.S. 1068, 89 S.Ct. 724, 21 L.Ed.2d 711 (1969). In *Buick* the defendant requested that the record be amended to include a colloquy which he alleged took place during trial, but had been omitted from the transcript. The district court denied the motion on the ground that the court reporter's transcript was accurate. We noted that the district court's determination of the issue was final and conclusive and denied defendant's renewed motion to amend the record on appeal. 396 F.2d at 913–14, n. 1.

■ We reject SCI's contention that *Buick* precludes Bergerco from challenging the district court's settlement of the evidence on appeal because the facts in this case differ significantly. In *Buick*, the defendant challenged the accuracy of an *existing* transcript of the trial proceedings, claiming that a colloquy between the trial judge and a spectator in the courtroom had been erroneously omitted. While a party may seek to correct any omissions or misstatements in the record on appeal, a court reporter's transcript is generally presumed to be correct. *Abatino v. United States*, 750 F.2d 1442, 1445 (9th Cir.1985). With nothing more than defendant's mere allegation of error before us in *Buick*, we declined to disturb the district court's determination that the transcript was accurate.

In contrast, the transcript here is wholly unavailable. Pursuant to Rule 10(c), Fed. R.App.P., Bergerco prepared a statement reconstructing the evidence at trial which was modified by the district court and included in the record on appeal. Any presumption of accuracy which might attach to a reporter's transcript simply does not apply where the transcript is missing entirely. The parties, as well as the trial court, relied upon their memories and any notes taken during the proceeding to reconstruct the record. When a dispute over the evidence arose, the district court settled the matter according to its own recollection of the trial.

If an appellant is to be barred from challenging a statement of the evidence approved through a Rule 10(c) proceeding, the district court's version of the evidence at trial will always prevail. However, the judge's recollection of what transpired is not necessarily more reliable than that of the parties, especially if a long period of time has passed between the trial and the Rule 10(c) proceeding. Moreover, once the court has entered judgment, it may become subject to the very natural weight of its conviction, tending to focus on that which supports its holding. To prohibit all challenges to a Rule 10(c) settlement of the evidence would effectively insulate the court's factual findings, to the exclusion of other recollections, from review whenever a transcript is lost or inadvertently destroyed. Rule 10(c) was intended to produce objective reconstruction. That desirable result is not comfortably furthered by

insulating the court's personal recollections from challenge on appeal.

### D. Availability of Remand

Although we permit a challenge to the reconstructed record on appeal, we do not simply accept Bergerco's version of the facts. Our review is limited to evidence contained in the record on appeal. See, e.g., Abatino, 750 F.2d at 1445. Rule 10(e) authorizes a court of appeals to "direct that [an] omission or misstatement be corrected;" however, we were not at the trial and are not in a position to resolve the conflict as to what evidence was actually presented. Rather, we must decide whether a resolution of the disputed factual issues is essential to allow us meaningful appellate review of the district court's decision. If so, we must consider remanding the case for a retrial on those issues.

### 1. Criminal Cases

█ A number of appeals courts have confronted the difficulty of reviewing a criminal conviction where all or parts of the trial transcript are missing. Although a failure to record parts of a trial proceeding may constitute error, courts have not adopted a per se rule of reversal. See United States v. Doyle, 786 F.2d 1440, 1442 (9th Cir.), cert. denied, 479 U.S. 984, 107 S.Ct. 572, 93 L.Ed.2d 576 (1986); United States v. Gillis, 773 F.2d 549, 554 (4th Cir.1985); United States v. Renton, 700 F.2d 154, 157 (5th Cir.1983), citing United States v. Selva, 546 F.2d 1173 (5th Cir. 1977). An appellant must point to specific errors alleged to have occurred during the unrecorded portions to support a claim that

the absence of a complete transcript resulted in prejudicial error requiring a new trial.[2] Renton, 700 F.2d at 159. Similarly, if the error alleged by the appellant is harmless, the appellate court may affirm on the record before it, rather than remanding to resolve a factual dispute irrelevant to its decision.[3]

However, where a defendant makes allegations of error which, if true, would be prejudicial, the unavailability of a transcript may make it impossible for the appellate court to determine whether the defendant's substantive rights were affected. United States v. Workcuff, 422 F.2d 700, 702 (D.C.Cir.1970); Parrott v. United States, 314 F.2d 46, 47 (10th Cir.1963). In such a situation, the unavailability of a transcript itself becomes the problem because it deprives the defendant of the opportunity to make a fair showing on appeal of the gravity of claimed error. The Fifth Circuit has concluded that a court "must be able to say affirmatively that no substantial rights of the appellant were adversely affected by the omissions from the transcript; that is, it must exclude the possibility of any error other than harmless error" in order to hold that the absence of a transcript does not warrant reversal. United States v. Upshaw, 448 F.2d 1218, 1224 (5th Cir.1971), cert. denied, 405 U.S. 934, 92 S.Ct. 970, 30 L.Ed.2d 810 (1972).

Even when an appellant complies with Rule 10(c) and prepares a substitute statement of the evidence, the reconstructed record may be insufficient to exclude the possibility of prejudicial error. In United States v. Knox, 456 F.2d 1024 (8th Cir.

---

**2.** In a few cases where no specific error has been alleged and no attempt has been made to reconstruct the evidence pursuant to Rule 10(c), the appellate court has remanded for a hearing so that the district court may attempt to compose a substitute for the missing evidence which is sufficient for appellate review or to order a new trial if it determines that the absence of a verbatim transcript will prejudice appellant's substantial rights. See Selva, 546 F.2d at 1174; Brown v. United States, 314 F.2d 293, 295–96 (9th Cir.1963).

**3.** For example, in Edwards v. United States, 374 F.2d 24 (10th Cir.1966), cert. denied, 389 U.S. 850, 88 S.Ct. 48, 19 L.Ed.2d 120 (1967), the

defendant alleged that the district court had prevented his counsel from inquiring into his reputation for being "'honest and a man of integrity.'" 374 F.2d at 26. Although the side bar conference at which this alleged error occurred was not recorded, the transcript of the rest of the trial showed that seven character witnesses for the defense subsequently testified as to the defendant's reputation as "a good, law-abiding citizen." The court concluded that even accepting as true appellant's version of events at the unreported conference, no prejudicial error had occurred and that a remand for a new trial was unnecessary. Id. at 26–27.

1972) (per curiam), the defendant appealed his conviction, alleging that the joinder of several charges against him resulted in jury confusion. When the court reporter's notes were lost after trial, the defense attempted to reconstruct a narrative record as a substitute pursuant to Rule 10(c). The district court incorporated several alterations proposed by the prosecution and certified the reconstructed record, denying defendant's motion to amend the record further. The defendant argued that the unavailability of the original trial transcript deprived him of a fair appeal. The Eighth Circuit agreed, concluding that "[a]n actual transcript would be essential to proper review" and that a remand for a new trial was appropriate. *Id.* at 1025.

### 2. *Civil Cases*

Although no federal appellate court has remanded a civil case for a new trial due to a missing or inadequate transcript,[4] several have stated that a remand would be warranted in certain circumstances. In *Calhoun v. United States*, 384 F.2d 180 (5th Cir.1967), a condemnation proceeding, the court stated that "where the appellant does contend that errors were made, he may be prejudiced by the lack of a complete record in that the reviewing court may be unable to rule on the claimed errors. In such circumstances the failure to record may constitute adequate grounds for reversal and the ordering of a new trial." *Id.* at 184. Similarly, in *Herndon v. City of Massillon*, 638 F.2d 963 (6th Cir.1981) (per curiam), the court suggested that "[i]n certain cases [the effort to reconstruct the record pursuant to Rule 10(c)] may unavoidably fall short of the precision necessary for a record amenable to review, and a new trial may be necessary." 638 F.2d at 965. *See also Black v. O'Haver*, 567 F.2d 361, 371 (10th Cir.1977) ("In some circumstances, we are sure, the lack of a complete

transcript of trial would call the fairness of the proceedings into question."), *cert. denied*, 435 U.S. 969, 98 S.Ct. 1609, 56 L.Ed.2d 61 (1978).

None of the cases we have examined or had called to our attention have indicated exactly what circumstances would justify remanding a civil case for a new trial because of a missing or incomplete transcript. Nevertheless, some of the published reasons for denying requests for a remand are instructive. In *Herndon,* the appellant argued for a new trial because a transcript of the jury instructions was unavailable, effectively insulating any error therein from review. The Sixth Circuit rejected this argument, pointing out that the appellant had not alleged any specific error in the jury instructions which prejudiced his rights in any way. 638 F.2d at 965. Moreover, he had made no effort to provide a substituted record which might be adequate for purposes of appeal by following the procedures provided for in Rule 10(c). *Id.* at 964. The court concluded that "a party may not seek a new trial simply because matters occurring in the district court are not reflected in the transcript," but "must at least attempt to cure the defect by reconstructing the record as provided by Fed. R.App.Pro. 10(c)." *Id.* at 965.

Similarly, the Fifth Circuit in *Murphy v. St. Paul Fire & Marine Ins. Co.*, 314 F.2d 30 (5th Cir.), *cert. denied*, 375 U.S. 906, 84 S.Ct. 197, 11 L.Ed.2d 146 (1963), rejected the appellants' assertion that they were entitled to a new trial because part of the transcript had been destroyed. The court noted that appellants had failed to avail themselves of the procedures provided for in Rule 75, Fed.R.Civ.P., (predecessor of Rule 10, Fed.R.App.P.) which might have produced a sufficient substitute for the record on appeal. 314 F.2d at 31–32. More importantly, the court ruled that the missing portion of the transcript was irrelevant

---

**4.** A number of state cases have held that a remand for a new civil trial is warranted in certain circumstances where the original transcript is unavailable. *See, e.g., Fickett v. Rauch,* 31 Cal.2d 110, 187 P.2d 402 (1947). For additional cases, see Annotation, *Court Reporter's Death or Disability Prior to Transcribing Notes as Grounds for Reversal or New Trial,* 57 A.L.R.4th

1049 (1987). The California Code of Civil Procedure, § 914, specifically authorizes the trial court or a reviewing court to vacate a judgment and order a new trial where the death or disability of the court reporter or the loss or destruction of the reporter's notes makes transcription impossible.

to its decision to affirm. The appellants' primary contention was that the jury instructions on res ipsa loquitur and implied warranty were erroneous. Although a transcript of the jury instructions was unavailable, the rest of the trial transcript was intact. Based on the evidence presented at trial, the reviewing court concluded that the appellants were not entitled to a charge on the doctrine of res ipsa loquitur or implied warranty, and thus, no error had occurred. *See also Black v. O'Haver*, 567 F.2d at 371 (holding that lack of a complete transcript does not require remand where the court's decision is based upon the law and undisputed facts).

These cases suggest that in civil, as in criminal cases, the lack of a complete transcript does not automatically warrant reversal. However, in certain circumstances, the original transcript may be so essential to meaningful appellate review that a remand for a new trial is necessary to insure a fair appeal. Based on our reading of the above cases, we have identified several factors which are relevant in determining whether a new trial is warranted in a given case. We conclude that an appellant seeking a new trial because of a missing or incomplete transcript must 1) make a specific allegation of error; 2) show that the defect in the record materially affects the ability of the appeals court to review the alleged error; and 3) show that a Rule 10(c) proceeding has failed or would fail to produce an adequate substitute for the evidence. We believe these factors would be presented only in rare circumstances.

### E. *Necessity of Remand in this Case*

Bergerco alleges that the district court erred in concluding that loss of the Vegoils' contract was not foreseeable to SCI. In order adequately to consider this allegation of error, full review of the evidence on the issue of foreseeability submitted to the district court is warranted. According to Bergerco, Ms. Gross testified at trial that she had specifically pointed out to Mr. Holmes, SCI's agent, that the Vegoils' contract was *conditioned* upon the goods being shipped nonstop to Bombay and that otherwise Bergerco would not get paid for the cargo. We cannot, on this record, know if such testimony was actually given at trial, but if it was, it would appear highly material to the issue of foreseeability. Because we are precluded from knowing the exact content of Ms. Gross' testimony at trial, our capacity to discharge our obligation to review the district court's conclusion on foreseeability is impaired.

In addition to showing that the missing transcript materially affects this court's ability to review the alleged error, Bergerco must also show that the Rule 10(c) proceedings failed to cure the defect in the record. Bergerco did attempt a Rule 10(c) settlement of the evidence in good faith. However, the district court rejected its version of Ms. Gross' testimony on a crucial point. Although Bergerco has not offered any affidavits by counsel or the witness supporting its account of Ms. Gross' testimony at trial, other statements preserved in the record put in issue the version proffered by the district court. In particular, the transcript of the closing arguments on April 21, 1983 show that SCI's counsel stated that "she [Ms. Gross] testified here in court that she read the provisions of the telex to Holmes." This undisputed comment by SCI's counsel during argument creates doubts about the adequacy of the district court's certified statement of the evidence at trial.

Given the questions raised by Bergerco as to the accuracy of the statement of the evidence, we cannot meaningfully review the district court's finding on the issue of foreseeability without considering further the substance of Ms. Gross' testimony at trial. This is one of the rare cases where a retrial is appropriate. Therefore, we vacate the judgment in favor of the defendant-appellee and remand this case to the district court for a limited retrial on the foreseeability of Bergerco's damages.

This panel will retain jurisdiction over any new appeal from the judgment of the district court.

Judgment vacated; case remanded.