The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 2, 2020

**2020COA3**

**No. 18CA2158, *People in Interest of Z.M.* — Appellate Procedure — Record on Appeal — Supplementing the Record on Appeal After Record is Transmitted**

In this dependency and neglect proceeding, a division of the court of appeals addresses a question of first impression in Colorado: What is the meaning of the word "material" in C.A.R. 10(f)(2)? Father argues that all documents, transcripts, and other materials related to the proceeding that is the subject of the appeal are necessarily material for purposes of the appellate record. The division rejects this argument, concluding that the Colorado Appellate Rules and Colorado case law necessarily contemplate a narrower definition.

COLORADO COURT OF APPEALS **2020COA3**

Court of Appeals No. 18CA2158
El Paso County District Court No. 17JV537
Honorable Jessica L. Curtis, Judge

The People of the State of Colorado,

Appellee,

In the Interest of Z.M., G.F., and L.M., Children,

and Concerning J.F.,

Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE BERGER
Terry and Welling, JJ., concur

Announced January 2, 2020

Diana K. May, County Attorney, Melanie Douglas, Special Assistant County
Attorney, Gunnison, Colorado, for Appellee

Anna N.H. Ulrich, Guardian Ad Litem

Steven E. Baum, Office of Respondent Parents' Counsel, Ainsley E. Bochniak,
Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, J.F. (father) appeals the termination of his parent-child legal relationship with G.F. and Z.M. (the children).[1]  He argues that the lack of a complete record on appeal denied him due process and that the juvenile court erred when it determined that there were no less drastic alternatives to termination.

¶ 2     C.A.R. 10(f)(2) provides:

> If any material part of the trial court record is omitted or missing from the record by error or accident or is misstated therein after the record is transmitted to the appellate court, the appellate court, on motion or of its own initiative, may order that the supplemental record be certified and transmitted.

¶ 3     We address a question of first impression in Colorado: What is the meaning of the word "material" in C.A.R. 10(f)(2)?  Because we conclude both that father failed to demonstrate that the missing portions of the record were material and that the record supports the juvenile court's findings, we affirm.

---

[1] Parental rights to another child, L.M., were also at issue in this case.  But L.M. is not J.F.'s child, and there are no issues with respect to L.M. before us.

# I. Background

¶ 4 The El Paso County Department of Human Services moved for an adjudication that the children were dependent or neglected by father. The court granted the motion, and the children were placed with maternal aunt and uncle. The court also adopted a treatment plan for father.

¶ 5 The guardian ad litem (GAL) later moved to terminate father's parental rights, alleging that father had not complied with his treatment plan. After a hearing, the juvenile court granted the motion.

¶ 6 Father then appealed to this court. He designated thirty-two hearing transcripts for the appeal. Several months later, it was discovered that the record was missing six of the requested hearing transcripts.

¶ 7 Father moved this court to supplement the record, and this court granted the motion. The record was supplemented, but father's counsel found that three transcripts remained missing. Father's counsel again moved to supplement the record and then amended that motion to request just two transcripts.

¶ 8    The court denied father's second motion "with leave to refile with a statement of materiality" under C.A.R. 10(f)(2).  A few days later, the Chief Judge of this court entered a new order deferring a ruling on father's request to supplement the record to the merits division and directing father to "address C.A.R. 10(f)(2)'s materiality standard in his opening brief."  The parties then completed appellate briefing.

¶ 9    After briefing was completed, a judge of this court ordered the juvenile court to supplement the record with the remaining transcripts.  In response, the juvenile court submitted an affidavit from the transcriptionist assigned to the case.  The affidavit stated that "there was no recording for the hearing dates requested . . . , thus no transcripts [could] be produced."

## II.    Motion to Supplement the Record

¶ 10    Father contends that this court violated his due process rights and his right to effective assistance of counsel when it ordered him to address his motion to supplement the record in his opening brief and to file his opening brief without access to those transcripts.  To address this alleged error, father asks that we "remand the case to

3

give the district court the opportunity to complete the record on appeal."

¶ 11    We reject this claim, as well as father's request for remand, for two reasons.  First, this court has the discretion to limit the record on appeal to its material portions, and father has not demonstrated that the missing transcripts were material.  Second, father has not demonstrated that he was denied due process or the right to effective assistance of counsel.

### A.    Father Has Not Demonstrated that the Missing Transcripts Were Material

¶ 12    Father, championing a broad definition of materiality, contends that the missing transcripts necessarily contained information material to his appeal.  We disagree because, although the Colorado Appellate Rules do not define materiality, those rules and Colorado case law contemplate a narrower definition.

¶ 13    In a dependency and neglect appeal, a respondent parent must, upon request, be provided a "transcript of the trial proceeding for the appeal."  § 19-3-609(2), C.R.S. 2019; *see People in Interest of M.N.*, 950 P.2d 674, 676 (Colo. App. 1997) (the free transcript is of the termination hearing).  More specifically, C.A.R. 3.4(d)(1) states

that the record on appeal *must* include the trial court file and all exhibits. The record *may* also include "any transcripts designated and ordered by the parties . . . ." *Id.*

¶ 14    C.A.R. 10(f)(2) grants the appellate court express discretion to limit the record on appeal based on materiality: "If any *material* part of the trial court record is omitted or missing from the record by error or accident . . . after the record is transmitted to the appellate court, the appellate court, on motion or of its own initiative, may order that the supplemental record be certified and transmitted." (Emphasis added.)

¶ 15    To obtain a new trial on the basis of an incomplete record (relief that father does not seek here), a civil appellant must (1) make a specific allegation of error; (2) show that the record defect materially affects the appellate court's ability to review the alleged error; and (3) show that a C.A.R. 10(e) proceeding has failed or would fail to produce an adequate substitute for the record defect. *Knoll v. Allstate Fire & Cas. Ins.*, 216 P.3d 615, 617-18 (Colo. App. 2009) (applying then C.A.R. 10(c), now C.A.R. 10(e)). Federal courts have adopted an analogous standard. *E.g.*, *Bergerco, U.S.A. v. Shipping Corp. of India, Ltd.*, 896 F.2d 1210, 1217 (9th Cir. 1990).

¶ 16    Father asserts that "any memorialized hearings, exhibits, videos, etc. are material to the appeal because counsel must review such materials to determine if they give rise to legal issues."  Under father's definition, every document and transcript of proceedings is material.  Adoption of this definition necessarily abrogates the materiality considerations required under C.A.R. 10(f)(2), which refers to "any *material* part of the trial court record."  (Emphasis added.)  Moreover, by requiring appellants seeking a new trial on the basis of an incomplete record to connect the defect in the record to a specific error, Colorado and federal courts have explicitly rejected father's position that "materiality must . . . refer to the appeal generally and not to any particular legal issue."  Thus, the appellate rules and case law necessarily contemplate a narrower definition of materiality.

¶ 17    Father fails to explain how the two missing transcripts are material under any reasonable definition of the term.  Accordingly, father has not sufficiently demonstrated that the missing transcripts are material.

### B.    Father Makes No Colorable Due Process or Ineffective Assistance Claim

¶ 18    Without any supporting authority, father asserts that this court violated his rights to due process when it ordered him to address the materiality of the missing transcripts in his opening brief. Although father makes no ineffective assistance of counsel claim, he further asserts that the lack of these transcripts prevented his counsel from providing effective assistance on appeal and rendered the process fundamentally unfair. We reject each contention.

¶ 19    We review de novo whether father's right to due process was violated. *People in Interest of C.J.*, 2017 COA 157, ¶ 25.

¶ 20    In termination proceedings, a parent's rights must be protected "with fundamentally fair procedures." *L.L. v. People*, 10 P.3d 1271, 1276 (Colo. 2000) (quoting *Santosky v. Kramer*, 455 U.S. 745, 745 (1982)). "These procedures include a parent receiving notice of the hearing, advice of counsel, and a meaningful opportunity to be heard and defend." *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 40. The record here shows that father was afforded a treatment plan, notice of the proceedings, a hearing on the termination motion before an impartial judge, and the assistance of counsel.

¶ 21    Due process is not violated when a parent has access to a record of sufficient completeness to permit proper appellate consideration of the parent's claims.  *See M.L.B. v. S.L.J.*, 519 U.S. 102, 128 (1996).  The record in this case included the case file and all but two of the thirty-two requested transcripts, including full transcripts of the termination hearing.

¶ 22    We note that, although it is impossible to know precisely what occurred in the hearings that were not transcribed, both hearings' proceedings were memorialized in minute orders.  At the first hearing for which there is no transcript, according to the minute order and father's opening brief, the court transferred custody of the children to the aunt and uncle with whom they were already staying.  At the second hearing for which there is no transcript, according to the minute order, the court ordered the GAL to file a motion for an allocation of parental rights.  On that same date, the court entered an order requiring mother to leave the aunt and uncle's home for the safety of the children.  Father has not explained why the transcripts of these hearings are material to his claim on appeal.

¶ 23    More importantly, the juvenile court did not rely on either of the untranscribed hearings in its termination order.  As shown in Part III below, the court had ample information to determine father's one claim on appeal.  Accordingly, the record was sufficiently complete.

¶ 24    Moreover, there has been no showing that the unavailability of the complete record under C.A.R. 3.4 resulted in deficient performance by appellate counsel.  *See People in Interest of N.A.T.,* 134 P.3d 535, 539 (Colo. App. 2006).

¶ 25    Finally, though not controlling because dependency and neglect proceedings are civil in nature, *see, e.g., People in Interest of Z.P.,* 167 P.3d 211, 214 (Colo. App. 2007), Colorado criminal case law further supports our conclusion.  To prevail on a claim that the lack of a complete record offended a criminal appellant's due process rights, the appellant "must *always* demonstrate specific prejudice resulting from the state of that record."  *People v. Rodriguez,* 914 P.2d 230, 300-01 (Colo. 1996).  Similarly, to show that the incomplete record rendered counsel unable to provide effective assistance, the appellant must "identify . . . how the incomplete record prejudiced his counsel's ability to raise any issue

on appeal." *Id.* at 300. In this case, father has failed to identify any prejudice resulting from the state of the record.

¶ 26     Accordingly, we reject father's due process claim and decline to remand to the juvenile court for further proceedings to settle the record.

### III.  Less Drastic Alternatives

¶ 27     Father also contends that the juvenile court reversibly erred when it found that there was no less drastic alternative to termination. Specifically, father asserts that the court lacked sufficient evidence to conclude that an ongoing relationship with father was not in the children's best interests. He further asserts that an allocation of parental responsibilities to the aunt and uncle with whom the children were placed was an appropriate less drastic alternative. We disagree.

### A.  Law and Standard of Review

¶ 28     To terminate parental rights, a court must find by clear and convincing evidence that (1) the child has been adjudicated dependent or neglected; (2) the parent did not comply with or was not successfully rehabilitated by an appropriate, court-approved treatment plan; (3) the parent is unfit; and (4) the parent's conduct

10

or condition is unlikely to change within a reasonable time.  § 19-3-604(1)(c), C.R.S. 2019; *People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005).

¶ 29   Implicit in the statutory criteria for termination is the requirement that the court consider and eliminate less drastic alternatives.  *People in Interest of M.M.*, 726 P.2d 1108, 1122 (Colo. 1986).  In considering less drastic alternatives, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs.  *People in Interest of J.L.M.*, 143 P.3d 1125, 1126 (Colo. App. 2006).

¶ 30   Determining whether to order permanent placement as an alternative to termination depends on the child's best interests.  *People in Interest of D.P.*, 160 P.3d 351, 356 (Colo. App. 2007).  Permanent placement is not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption.  *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011); *see People in Interest of A.R.*, 2012 COA 195M, ¶ 41.

¶ 31   The court *may* also consider whether the placement favors adoption rather than an allocation of parental responsibilities.  *See S.N-V.*, 300 P.3d at 920.

¶ 32     If the record supports the court's findings and conclusions

that no less drastic alternatives existed and that termination of

parental rights was in the child's best interests, we may not disturb

the court's determination.  *See People in Interest of M.B.*, 70 P.3d

618, 627 (Colo. App. 2003).

B.     Analysis

¶ 33     The juvenile court concluded that father did not comply with

his treatment plan and was unfit.  These findings are supported by

the record.

¶ 34     Father's treatment plan required him to (1) communicate with

the Department; (2) eliminate his substance abuse and take

sobriety tests; (3) learn and demonstrate effective parenting skills

and parental protective capacity, including attending visits and

ensuring the children's attendance at school; (4) have stable

housing and a legal income; (5) comply with probation or parole

requirements; (6) address domestic violence; and (7) participate in a

mental health evaluation.  Father did not comply with these

requirements.

¶ 35     To be sure, there were significant barriers to father's

compliance with some objectives.  Father was incarcerated for

significant portions of the case. His incarceration was due, in part, to new criminal charges. In addition, father had a protection order that prevented him from seeing the children. Indeed, he testified that he had not seen the children for two years. Nevertheless, father never inquired of the caseworker about any support for developing parenting skills in the absence of contact with the children.

¶ 36 The Department made reasonable efforts to accommodate father. For example, after father completed a substance abuse evaluation, the caseworker testified that she found a therapist who could work with father's scheduling needs; but he did not engage in substance abuse therapy or provide any sobriety test results. Similarly, after father completed a domestic violence evaluation, the Department found a domestic violence therapy provider who could work with father's scheduling requests, but father never attended therapy. Father never completed a mental health evaluation, let alone mental health therapy.

¶ 37 In addition, Father did not maintain sufficient contact with the Department. He refused to inform the caseworker where he lived or worked, and he never provided proof of his employment or income.

Father never offered to provide for the financial needs of the children at any point throughout this case. Indeed, the record shows that he never asked the Department about his children at all.

¶ 38 When asked if father could become fit in a reasonable time, the caseworker testified that she did not believe he could.

¶ 39 The juvenile court, explicitly taking the children's physical, mental, and emotional conditions and needs into account, also found that there were no less drastic alternatives to termination. Again, the record supports this finding.

¶ 40 The caseworker testified that termination of father's parental rights best served the physical, emotional, and mental health needs of the children and that there were no less drastic alternatives to termination. She testified that the children wanted to know "where they are going to be" and that they have "been on edge long enough."

¶ 41 A therapist testified that the children's fears of domestic violence have "improved greatly" after being placed with maternal aunt and uncle. The therapist recommended that they stay in their current placement.

¶ 42    Given this record, we conclude that the juvenile court did not err in finding that there were no less drastic alternatives to termination in this case and that termination was in the children's best interests.

## IV.    Conclusion

¶ 43    The judgment is affirmed.

JUDGE TERRY and JUDGE WELLING concur.