On April 2, 1996, Andrew P. Moore ("the father") and Kimberly L. Barber ("the mother") were divorced by a judgment of the trial court. Two children, Brock Moore ("Brock") and Drake Moore ("Drake"), were born of the parties' marriage. Pursuant to the divorce judgment, the mother was awarded custody of the children and the father was ordered to pay $512.72 per month in child support.
On June 5, 1997, the mother filed a petition seeking to modify the father's visitation with the children, asking the court to order the father not to smoke around the children and also seeking to have the father held in contempt for his alleged failure to pay one-half of the children's medical expenses and a portion of the parties' marital debt, as required by the 1996 divorce judgment. The father answered on June 24, 1997, and on February 23, 1998, he filed a counterclaim seeking joint custody of the parties' children and requesting a modification of child support. On March 30, 1998, the trial court entered an order based on an agreement reached by the parties in which it, among other things, ordered that the mother and the father not place the children in a smoke-filled environment or otherwise subject them to cigarette smoke. The trial court reserved its ruling on the issues of child support, contempt, and visitation; those issues not specifically addressed or reserved in the trial court's March 30, 1998, order, including custody, were deemed resolved by an agreement of the parties. On May 29, 1998, the trial court entered an order in which it addressed the remaining issues by finding the father in contempt, increasing the father's child-support obligation to $577 per month, modifying the *Page 1152 
father's visitation with the children, and denying any further relief.
On April 9, 2002, the father filed a petition for a modification, seeking custody of the parties' children. The father alleged that the mother was providing an "unsavory living environment" for the children. The mother answered on May 17, 2002, and counterclaimed, requesting that the trial court find the father in contempt for his failure to pay overdue child support and for smoking in the presence of the children and requesting an increase in the father's child-support obligation.
The trial court conducted hearings on October 24, 2002, February 17, 2003, May 30, 2003, September 16, 2003, and September 30, 2003; the trial court received ore tenus evidence at each hearing. Following the October 24, 2002, hearing, the trial court awarded the father custody of the parties' older child, Brock, pending further proceedings, and it awarded the mother scheduled visitation; Drake, the younger child, remained in the custody of the mother. At the close of testimony at the hearing on May 30, 2003, the trial court made an unconventional ruling by entering a "temporary order" from the bench in which the father was awarded custody of both children for 100 days and the mother was awarded scheduled visitation with the children every other weekend. Thereafter, the trial court entered a written order on June 4, 2003, in which it stated, in part:
 "Temporary alteration of the parties' prior domestic judgments appears to be appropriate in that respect, and various relief is consequently set out in the remaining provisions of this document. It is specifically noted, however, that all modifications of earlier orders as made below are expressly based upon a determination that the circumstances of the parties have materially changed since said earlier orders were entered, and to an extent justifying the instant [order].
 "For the present, the father is awarded the care, custody and control of the minor children. . . .
 "The foregoing reflects a change in child custody status. However, the positive good brought about thereby will more than offset the inherently disruptive effect that is caused. Additionally, this [order] is in the best interests of [the children].
". . . .
 "Notwithstanding the former provisions in this document, this order shall not be deemed the final [judgment] in this case. Some issues of the parties are thus not addressed by it. Further, some of the relief allowed above may have to be reviewed and/or changed after further testimony. Jurisdiction is consequently reserved for all such purposes, and so that the Court may hold a `follow-up hearing'. . . ."
On July 17, 2003, the mother petitioned this court for a writ of mandamus seeking review of the trial court's June 4, 2003, custody order; that petition was subsequently denied without an opinion. We note that the burden is on the petitioner seeking a writ of mandamus to demonstrate that their "petition presents such an exceptional case — that is, one in which an appeal is not an adequate remedy." Ex parte Dillard Dep't Stores, Inc.,879 So.2d 1134, 1137 (Ala. 2003) (citing Ex parte ConsolidatedPubl'g Co., 601 So.2d 423, 426 (Ala. 1992)).[1] The trial court held a "follow-up" *Page 1153 
hearing on September 16 and 30, 2003. After receiving further ore tenus evidence, the trial court entered a final judgment on October 2, 2003, awarding custody of the parties' children to the father.[2] The mother timely appealed.
The mother raises several issues on appeal. We find the resolution of the following issue to be dispositive. The mother contends that the trial court erred in awarding custody of the children to the father because, she says, the trial court misapplied the burden of proof set forth in Ex parte McLendon,455 So.2d 863 (Ala. 1984), necessary to justify a change in custody. Specifically, the mother contends that the trial court impermissibly shifted the burden of proof of the McLendon
standard to her after it issued its June 4, 2003, order awarding the father custody of both of the parties' children for 100 days; she contends the effect of that order was to require her to meet the McLendon standard in order to regain custody. After carefully reviewing the record on appeal, we agree that the trial court erred.
A detailed recitation of the facts in this case would serve no useful purpose. The parties in this case made a number of allegations against each other with regard to their respective parenting abilities. The father alleged that the mother exposed the children to sexually explicit materials that were sold in the mother's novelty store. The mother alleged that the father continued to smoke around the children in violation of the trial court's orders and that the father took no interest in the children's education. The mother and the father both alleged that they were subjected to physical violence during the marriage.
Initially, we note that the ore tenus rule only applies to questions of fact and that where the trial court resolves a factual issue in a custody action its determination on that issue is afforded a presumption of correctness on appeal. Reuter v.Neese, 586 So.2d 232 (Ala.Civ.App. 1991). However, when this court is presented with an issue of law, such as the application of the correct child-custody-modification standard, we review the judgment of the trial court de novo, without affording it any presumption of correctness. Ex parte Perkins, 646 So.2d 46
(Ala. 1994).
In Ex parte McLendon, supra, our supreme court held that the proper standard to be applied in child-custody cases wherein a parent has either voluntarily forfeited custody or has lost custody due to a prior judgment is whether there has been a material change in circumstances since the prior judgment; whether a change in custody will materially promote the best interests of the child; and whether the benefits of the change in custody will more than offset the inherently disruptive effect caused by uprooting the child. 455 So.2d at 865. The McLendon
standard also applies to those cases wherein a parent temporarily loses custody of a child. See Davis v. Moody, 459 So.2d 914
(Ala.Civ.App. 1984).
In Sims v. Sims, 515 So.2d 1 (Ala.Civ.App. 1987), this court distinguished an award of temporary custody from an award of pendente lite custody:
 "[T]emporary custody awards are generally intended to last until one of the parties petitions the court to modify the [order or judgment] granting temporary custody. Pendente lite orders, on the *Page 1154 
other hand, are generally entered only during the pendency of the litigation, and are usually replaced by a final order or [judgment] which is entered at the end of the litigation. Therefore, a pendente lite order, whether entered ex parte or after notice and hearing, clearly envisions a temporary disposition of custody pending a later final determination of the custody dispute. A second distinction that can be drawn between temporary custody awards and pendente lite awards lies in the manner by which the two orders may be reviewed. . . .
 "A third reason that pendente lite orders are distinguishable from temporary orders is that a trial court's judgment in a final [order or judgment] following a pendente lite order must be determined on the basis of evidence submitted to the court in support of the final [order or judgment]. It cannot be based on evidence of changed circumstances submitted in a hearing to modify a temporary [order or judgment]. Thus, the burden of proof in final [orders or judgments] following pendente lite orders is different from the burden of proof required to modify a previous temporary [order or judgment]."
Sims v. Sims, 515 So.2d at 2-3 (citations omitted). This court concluded "as a matter of law that pendente lite orders, unlike other temporary orders or [judgments], do not activate theMcLendon rule." Sims, 515 So.2d at 3.
In the instant case, the mother was awarded primary physical custody of the children by an April 2, 1996, judgment of the trial court. The father first sought a modification of custody on February 28, 1998; the trial court denied that petition, and the children remained in the mother's custody. Therefore, the applicable standard to be applied to any subsequent petition to modify in this case is the custody standard set forth in Exparte McLendon, supra. Scacca v. Scacca, 694 So.2d 1
(Ala.Civ.App. 1997).
On April 9, 2002, the father filed a second petition for modification. After receiving ore tenus evidence on October 24, 2002, the trial court entered an order on November 1, 2002, on the case action summary sheet stating, in part, "Pending further proceedings, the father shall have custody of the minor child, Brock, for a period of 90 days." The mother did not petition this court for review of the trial court's November 1, 2002, order.See Sizemore v. Sizemore, 423 So.2d 239 (Ala.Civ.App. 1982) (holding that a pendente lite order is not a final judgment and, thus, the proper method of review of such an order is by petition for writ of mandamus).
The trial court subsequently held two more hearings and received additional ore tenus evidence. Following the May 30, 2003, hearing, the trial court entered a second order awarding the father custody of both of the children for 100 days. In its order, the trial court specifically found that its change in custody to the father was based upon a determination that the circumstances of the parties had materially changed. The trial court noted that its custody decision was not final, and it reserved jurisdiction pending a "follow-up" hearing to allow for further testimony to resolve remaining issues and "to monitor how the provisions [of its June 4, 2003, order] work in actual practice."
The trial court clearly stated in its June 4, 2003, order that its custody decision was not final, and it noted that its temporary award of custody to the father was pending a final disposition of custody after a "follow-up" hearing. Therefore, the trial court's June 4, 2003, order was a pendente lite order, i.e., a temporary disposition of custody pending a final custody hearing, at which the trial court would resolve the *Page 1155 
remaining issues and monitor the children's progress following the temporary change in custody. See Sims v. Sims, supra.
After the trial court entered its June 4, 2003, pendente lite order, the parties returned to court on September 16 and 30, 2003, for the trial court to conduct a "follow-up" hearing after the children had lived with the father for 100 days. A pendente lite order does not constitute a prior award of custody that would alter the applicable burden of proof with regard to the custody dispute. Creel v. Creel, 582 So.2d 1153 (Ala.Civ.App. 1991); Sims v. Sims, supra. Therefore, the burden of proof remained with the father to present sufficient evidence to necessitate a change in custody pursuant to McLendon. Sims v.Sims, supra.
The trial court heard testimony from the children, the mother, the father, and the father's current wife. The testimony elicited at the follow-up hearing focused on the children's behavior during the 100 days following the May 30, 2003, hearing and the effect that the change in custody had had on their behavior. On October 2, 2003, the trial court entered an order, substantially similar to its June 4, 2003, order, awarding the father custody of the children. In its October 2, 2003, order, the trial court indicated that it had considered all of the evidence presented to it over the course of the proceedings, including the additional evidence elicited during the "follow-up" hearing.
The supreme court's holding in Ex parte McLendon does not allow a trial court to modify custody on a trial basis or, as the mother argues occurred in this case, allow the trial court to experiment with an award of custody. We conclude that, under the facts of this case, the presumption favoring the mother as the custodial parent as stated in Ex parte McLendon eroded after the trial court entered its June 4, 2003, pendente lite order and allowed the father to return to court to present evidence that was based on the 100 days the children were in his custody in support of his contention that he was the more suitable parent to have custody. Accordingly, we must conclude that the June 4, 2003, order of the trial court impermissibly shifted the burden of meeting the McLendon standard to the mother. Accordingly, the judgment of the trial court is reversed.
REVERSED.
YATES, P.J., and PITTMAN, J., concur.
CRAWLEY, J., concurs in the result, without writing.
MURDOCK, J., dissents, with writing.
[1] Mandamus is an extraordinary remedy that will be granted only when "(1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court's jurisdiction is properly invoked." Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala. 2000) (citing Ex parte Mercury Fin. Corp., 715 So.2d 196, 198
(Ala. 1997)).
[2] The trial court's October 2, 2003, judgment is identical to its June 4, 2003, temporary order, except that it included provisions regarding visitation and child support, and a reference to hearing additional evidence during the September 30, 2003, hearing.