60 So.3d 909 (2010)
William McCULLOCH
v.
Jennifer McCulloch CAMPBELL.
2090169.
Court of Civil Appeals of Alabama.
September 17, 2010.
*910 J.R. Herring, Dothan, for appellant.
Robert H. Brogden, Ozark, for appellee.
*911 MOORE, Judge.
William McCulloch ("the father") appeals from a judgment transferring custody of B.M. and N.M. (hereinafter sometimes referred to collectively as "the children") to Jennifer McCulloch Campbell ("the mother"). We reverse.

Background
The Dale Circuit Court ("the trial court") entered a judgment divorcing the father and the mother on June 6, 2003. The trial court awarded the parties joint legal custody of the two children born of their marriage, with the father receiving primary physical custody of the children and the mother receiving specified visitation rights.
In February 2008, the father, who was an active-duty member of the United States Army, notified the mother he would be deploying to Iraq in May 2008. Shortly before the father's deployment, the mother petitioned to modify custody of the children. On May 5, 2008, the trial court awarded the mother "pendente lite care, custody and control of the children pending further orders of the court." The mother traveled to Michigan to gain custody of the children from the children's paternal grandparents, with whom the father had left the children. The children returned with the mother to Alabama, where they attended the last two weeks of the 2007-2008 school year. The children remained in Alabama with the mother through the summer and into the following school year.
On February 11, 2009, the father moved to dissolve the pendente lite custody order, asserting that he was scheduled to return from his military tour on April 4, 2009. The trial court denied that motion. On April 30, 2009, the father again moved the trial court to dissolve the pendente lite custody order on the ground that his military service in Iraq had ended. The trial court denied that motion, noting that a final hearing on the mother's modification petition was approximately one month away.
The trial court held a final hearing on the mother's modification petition on June 10, 2009; the trial court received ore tenus evidence at that hearing. On August 10, 2009, the trial court entered its final judgment. In that judgment, the trial court acknowledged that the mother bore the burden of meeting the standard for modifying custody set out in Ex parte McLendon, 455 So.2d 863 (Ala.1984). That standard requires
"`the parent seeking a custody change to demonstrate that a material change in circumstances has occurred since the previous judgment, that the child's best interests will be materially promoted by a change of custody, and that the benefits of the change will more than offset the inherently disruptive effect resulting from the change in custody.'"
C.D.K.S. v. K.W.K., 40 So.3d 736, 739 (Ala. Civ.App.2009) (quoting Dean v. Dean, 998 So.2d 1060, 1065 (Ala.Civ.App.2008)).
In its final judgment, the trial court found that, since the last custody determination, the mother's life had significantly improved and that the parties' son had developed "mental health concerns" that were previously unknown. The trial court held that the counseling and therapy the son had received while in the pendente lite custody of the mother had "greatly improved [the son's] demeanor" and had diminished the physical manifestation of his mental-health problems and that it would be counterproductive to his progress to return the son to the custody of the father. The trial court further concluded that both children were excited about their new schools, that the mother's work schedule allowed her more time to spend with the children than the father's schedule would allow, and that there was no compelling *912 reason to separate the children. In addressing whether the benefits of a change in custody would outweigh the disruptive effects resulting from the change, the trial court stated:
"In reviewing the mother's standard of proof the court finds that the facts of this case are somewhat different from the usual custody modification case in that because of the father's military deployment the children are presently in the home and under the care of the parent seeking to modify custody. Therefore it is the court's belief that if the mother's petition is granted ... there will be little, if any, disruptive effect of changing custody. Stated differently if the court finds that the mother has met her burden of proof there will be no change in the children's physical residence or care and they will remain in the same care they have been in for the last fifteen months."
The trial court ultimately concluded that the mother had met her burden of proof by demonstrating that "there has been a material change in circumstances; that the good of the change will offset any disruptive effect, if any, and that the change will materially promote the children's best interests."
On September 4, 2009, the father moved to alter, amend, or vacate the judgment; on that same date, the father separately moved for a new trial. On October 5, 2009, the trial court denied the father's request for a new trial, but it granted in part the father's motion to alter, amend, or vacate the judgment. The trial court amended the visitation awarded to the father and amended certain other rights and responsibilities set forth in the trial court's August 10, 2009, judgment; the trial court denied all other aspects of the father's motion to alter, amend or vacate. The father timely filed his notice of appeal to this court.

I. Rule 10(d), Ala. R.App. P., Statement of the Evidence

On his notice of appeal, the father indicated that a transcript of the proceedings in the trial court was unavailable and that a statement of the evidence would be provided, pursuant to Rule 10(d), Ala. R.App. P. The trial court ultimately filed a statement of the evidence with this court. However, the father asserts that the trial court did not substantially comply with Rule 10(d) in providing that statement of the evidence. Rule 10(d) provides:
"If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection. If the appellant prepares such a statement, the appellant shall serve it on the appellee within 28 days (4 weeks) after filing the notice of appeal; the appellee, within 14 days (2 weeks) after service, may serve on the appellant objections or proposed amendments to the statement. If the appellee serves no objection or proposed amendments then, within 21 days (3 weeks) after the statement was served on the appellee, the appellant shall file the statement with the trial court for approval. If the appellee serves on the appellant any objections or proposed amendments, then, within 7 days (1 week) after service, the appellant shall file the statement and any objections or proposed amendments with the trial court for settlement and approval. Within 21 days (3 weeks) after the filing, the trial court shall rule, settling any questions regarding the objections and proposed amendments, and issuing an approved statement of the evidence or proceedings. The statement, either as approved by the court or as issued by the court after its ruling, shall be filed with the clerk of the trial *913 court, who shall include it in the record on appeal."
On December 7, 2009, the father served the mother with his statement of the evidence. On that same date, the father filed, by facsimile transmission, his statement of the evidence with the trial court. The following day, the father filed with the trial court, presumably by mail or by hand delivery, another copy of his statement of the evidence.
On December 22, 2009, the mother submitted her "Objections to Statement of Evidence Filed by Father." In her filing, the mother indicated that she objected to the father's entire statement of the evidence and that, because of the breadth of her objections, she could not provide a line-by-line objection to the father's proposed statement. As a result, the mother provided her own 24-page version of the evidence.
On December 28, 2009, the father again filed his "Notice of Filing Statement of the Evidence" with the trial court. In his filing, the father stated that the mother,
"having failed to file objections or proposed amendments to [the father's] statement of the evidence filed on December 7, 2009, as provided by ... Rule [10(d), Ala. R.App. P.], [the father] hereby submits said statement of the evidence for approval by the trial court."
The father did not include in his statement any of the mother's objections or her version of the evidence.
The mother moved to strike the father's December 28, 2009, notice of filing, asserting that she had fully complied with Rule 10(d). The mother asserted that her response to the father's statement of the evidence had been timely filed because the father's facsimile filing on December 7, 2009, was not a valid filing under the Alabama Rules of Civil Procedure and that the mother's time for response ran from December 8, 2009, which, she asserted, was the date the father properly filed his statement of the evidence with the trial court.
In response to the parties' multiple filings and their dispute as to the evidence presented at the trial, the trial court prepared its own statement of the evidence. On February 4, 2010, the father moved to supplement the trial court's statement of the evidence, pursuant to Rule 10(f), Ala. R.App. P. Although the mother objected to that motion, the trial court, relying on Bobo v. Bobo, 585 So.2d 54 (Ala.Civ.App. 1991) (implicitly recognizing that a trial court's statement of the evidence, prepared pursuant to Rule 10(d), Ala. R.App. P., may be supplemented pursuant to Rule 10(f), Ala. R.App. P.), granted the father's motion and ordered the mother to respond thereto.
On March 19, 2010, the trial court entered its "Supplemental and Final Statement of the Evidence." In that supplemental statement, the trial court acknowledged that the exhibits submitted by the father had been admitted into evidence at the trial and had been made a part of the record. Thus, the father's exhibits are properly before this court.
The father asserts that the trial court did not substantially comply with Rule 10(d) because, he says, it did not adopt his statement of the evidence, to which, he asserts, the mother had failed to object. In support of his argument, the father asserts that the mother failed to respond to his proposed statement within the 14-day period allowed by Rule 10(d) and, therefore, that his proposed statement should have been accepted in its entirety. The father also asserts that, even if the mother's response was timely, she attempted to "initiate" the preparation of her own version of the statement of the evidence, in violation of Rule 10(d), and, *914 thus, that her "amended statement of the evidence" should have been disregarded.
The record reveals the parties' confusion as to the service and filing requirements of Rule 10(d). Rule 11(d) does not require the appellantin this case, the fatherto initially file the proposed statement of the evidence with the trial court. Rule 10(d) specifies that the appellant "shall serve it on the appellee within 28 days (4 weeks) after filing the notice of appeal." Only after the specified time in which the appellee is required to respond with objections has elapsed is the appellant instructed to file the proposed statement of the evidence and any objections thereto with the trial court for settlement and approval. See Rule 10(d). Thus, whether the father filed his proposed statement of the evidence with the trial court on December 7 or December 8 has no bearing on when the father served the mother with the statement and when the mother's time to object began to run.
The mother does not dispute that she or her legal counsel received the father's proposed statement of the evidence on December 7, 2009. Thus, the mother had 14 days from December 7, i.e., until December 21, 2009, to respond with her objections or proposed amendments to the father's proposed statement of the evidence. The mother responded on December 22, 2009; thus, her objections were one day late.
Relying on Ray v. Ray, 339 So.2d 82 (Ala.Civ.App.1976), the father argues that the untimeliness of the mother's objections required the trial court to disregard those objections in their entirety. We disagree. In Ray, the appellant wholly failed to submit a statement of the evidence, and this court had no evidence upon which to review the issues raised on appeal. See Ray, 339 So.2d at 84. In this case, this court is presented with a statement of the evidence on appeal. Thus, Ray is inapposite to this case.
Further, the father fails to articulate how the mother's technical violation of Rule 10(d) or the trial court's consideration of the mother's untimely objections has substantially harmed him. The trial court did not adopt verbatim the mother's amended version of the evidence; rather, it merely considered it, along with the father's version, in drafting its own statement of the evidence. Thus, even had the trial court stricken the mother's objections from consideration, the trial court might still have prepared the same final statement of the evidence, based upon its own recollection of the evidence.
Rule 45, Ala. R. Ala. P., provides:
"No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground or misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
Because the father has failed to explain how the trial court's consideration of the mother's untimely filed objections resulted in substantial injury to him, we need not address the father's argument on this issue further. See Rule 45, Ala. R.App. P.; see also Edwards v. Allied Home Mortgage Capital Corp., 962 So.2d 194, 213 (Ala. 2007) (concluding that, when the appellant could not show substantial injury resulting from the trial court's ruling allowing certain cross-examination, which the appellant alleged to be in violation of the Alabama Rules of Evidence, the trial court's ruling did not constitute reversible error); and *915 Costarides v. Miller, 374 So.2d 1335, 1337 (Ala.1979) (discussing the "harmless error" rule, under which an appellant must not only show error, but also must demonstrate that the error resulted in a substantial injury to the appellant's rights in order to warrant a reversal).
The father also relies on Adams v. Adams, 335 So.2d 174 (Ala.Civ.App.1976), in arguing that the mother improperly "initiated" the preparation of her own proposed statement of the evidence by objecting to the entirety of the father's proposed statement and submitting her own version of the evidence. We conclude that Adams is not controlling as to the issue raised on appeal. In Adams, no transcript or statement of the evidence was provided to the court on appeal, and the issue considered in that case on appeal was whether the appellee had had an equal opportunity to provide the appellate court with a transcript or a statement of the evidence, pursuant to Rule 10(d). 335 So.2d at 176-77. The court in Adams concluded that, pursuant to Rule 10(d), the appellee had no right to initiate the preparation of a proposed statement of the evidence and was allowed only to respond if such a statement was filed by the appellant. Id. Thus, the court in Adams concluded that the lack of a statement of the evidence was chargeable only against the appellant. Id. at 177.
Whether the appellant or the appellee should be charged with the responsibility of obtaining the transcript or preparing the statement of the evidence is not at issue in this case. At issue is whether the manner in which the mother objected to the father's proposed statement of the evidence should be deemed improper. Rule 10(d) expressly allows the appellee to file objections to the appellant's proposed statement of the evidence and amendments thereto. The rule, however, contains no language limiting the manner in which the appellee may object or the manner in which the appellee may submit his or her amendments. Because the mother was merely responding to the father's proposed statement of the evidence, she did not "initiate" the preparation of her proposed statement of the evidence and she did not act improperly under Rule 10(d).
The father next challenges the substance of the trial court's final statement of the evidence, asserting that the trial court failed to properly resolve the conflict between the mother's and the father's versions of the evidence. The father also asserts that the trial court's statement failed to incorporate certain testimony set forth in the father's statement that did not conflict with the mother's statement.
In Pickett v. Pickett, 792 So.2d 1124, 1126 (Ala.Civ.App.2001), this court stated:
"`On review, [this court] will accept the approved statement of the evidence as true.' Mobley v. Turner, 346 So.2d 427, 428 (Ala.1977). No Alabama caselaw addresses whether a party to an appeal may challenge a trial court's approved statement of the evidence. Alabama's Rule 10(d), Ala. R.App. P., is equivalent to Rule 10(c), Fed. R.App. P. See Mobley v. Turner, 346 So.2d at 428. There is authority in the federal courts for a challenge of the approved statement of the evidence and for remanding the case for a new trial. See Bergerco, U.S.A. v. Shipping Corp. of India, Ltd., 896 F.2d 1210 (9th Cir.1990).
"The federal courts allow a challenge to a statement of the evidence. Bergerco, 896 F.2d at 1214-15. If a federal court is faced with such a challenge, it determines `whether a resolution of the disputed factual issues is essential to allow ... meaningful appellate review of the [trial] court's decision.' Bergerco, 896 F.2d at 1215. The Bergerco court, after discussing other federal cases involving requests for a new trial based on the lack of an original transcript, explained *916 that an appellant seeking a new trial so that a complete record can be developed must: 1) make a specific allegation of error; 2) show that the defect in the record materially affects the ability of the appeals court to review the alleged error; and 3) show that a Rule 10(c) [Fed. R.App. P.] proceeding has failed or would fail to produce an adequate substitute for the evidence.' Bergerco, 896 F.2d at 1217. After setting forth these factors, the Bergerco court stated, `We believe these factors would be presented only in rare circumstances.' Id.

"In this case, the mother's complaint that the statement of the evidence is incomplete and inadequate does not sufficiently demonstrate how the defect materially affects this court's ability to review the case. We decline, based on the lack of authority in the mother's brief and on the requirements set forth in Bergerco, to remand this case for a new trial."
In this case, the father proffered the evidence he believed had been improperly omitted from the trial court's approved statement of the evidence. He failed, however, to articulate in his brief how any of the purportedly omitted evidence prevents this court from reviewing the issues raised on appeal. Because the father failed to sufficiently demonstrate how the trial court's purported omission of certain evidence impacts this court's review of his appeal, we find no reversible error. See Rule 10(d); and Pickett, supra.

II. The McLendon Burden of Proof

Under Ex parte McLendon, a final judgment awarding one parent primary physical custody of a child creates a "rule of repose" by which it is presumed that the child should remain in the custody of that parent unless and until a material change of circumstances indicates that the positive good to the child resulting from a transfer of physical custody would outweigh the inherently disruptive effects of such a change. 455 So.2d at 865 (quoting Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ. App.1976)). The noncustodial parent, as defined by the last "final" custody judgment, bears the burden of meeting the McLendon standard, even if that parent has gained temporary custody of the child pursuant to a pendente lite order. It is reversible error for a trial court to relieve the noncustodial parent of that burden based on its pendente lite custody award. See Ex parte R.C.L., 627 So.2d 920, 921-22 (Ala. 1993) (recognizing that McLendon, supra, does not apply to a pendente lite order transferring custody of a child during the pendency of custody litigation, and, as a result, the presumption in favor of a natural parent over a nonparent is not defeated by such an order); and Sims v. Sims, 515 So.2d 1, 3 (Ala.Civ.App.1987) (recognizing in a custody-modification action that the entry of a pendente lite order transferring custody of a child during the pendency of that litigation did not shift the burden of proof under McLendon, supra, to the parent seeking to retain custody; the burden of proof remained on the noncustodial parent as it had been before entry of the pendente lite order).
The father asserts that, after the entry of the May 5, 2008, pendente lite order, the trial court impermissibly relieved the mother of her burden of proof under Ex parte McLendon, supra.[1] The father *917 points out that, when the trial court ordered that the children's custody be transferred to the mother while the father was stationed in Iraq, the children had been residing with him for close to five years pursuant to the parties' 2003 divorce judgment. The father argues that, under McLendon, the mother could gain permanent physical custody only by proving that the benefits to the children from transferring custody to her would outweigh the disruption to the children's lives caused by their removal from the father's custody. The father maintains, however, that the trial court did not require the mother to carry that burden because it erroneously considered only the disruptive effects of transforming the pendente lite custody order, under which the children had been living with the mother for over a year, into a final custody judgment.
In B.S.L. v. S.E., 849 So.2d 182 (Ala.Civ. App.2002), this court considered a judgment similar to the judgment at issue in the present case. In B.S.L., after awarding the father pendente lite custody, the trial court entered a judgment concluding that the father had met his burden under McLendon, supra. In its judgment, the trial court stated: "`The court ... find[s] that because of the length of time the child lived with the father under the pendente lite order, the inherent disruption presumed by law, in fact, does not exist....'" 849 So.2d at 185. From that judgment, the mother appealed. This court concluded that the trial court had improperly absolved the father of his burden to prove the second prong of the McLendon standard, i.e., that the benefits of a change in custody of the child outweighed the inherent disruption to the child, on the sole basis that the child was already living with the father as a result of the pendente lite order. Id. at 185-86. This court reversed the trial court's judgment and remanded the cause for the trial court to properly apply the McLendon standard. Id. at 186.
In accord with B.S.L., this court concludes that the trial court committed error by absolving the mother of her burden of proving that the positive good brought about by changing custody to her outweighs the disruptive effects of removing the children from the custody of the father. In fact, the trial court did not even consider those disruptive effects in transferring custody to the mother, but, as the trial court did in B.S.L., the trial court impermissibly focused exclusively on the period after the pendente lite order was entered in determining whether any disruption would, or, more precisely, did, occur. Based on that error, the judgment is reversed and the cause is remanded for the trial court to reconsider its judgment in light of the appropriate burden of proof. On remand, the trial court is instructed to determine whether the benefits to the children of transferring their custody to the mother will outweigh the disruptive effects caused by their removal from the custody of the father.
The father also argues that, on remand, the trial court should not be allowed to consider the circumstances existing since the pendente lite change of custody, citing Barber v. Moore, 897 So.2d 1150 (Ala.Civ.App.2004), and C.D.K.S. v. K.W.K., supra.
In Barber, the trial court removed custody of two children from their mother and awarded their father pendente lite custody *918 for 100 days, essentially to determine whether a "permanent" change of custody would be in the best interests of the children at issue. Following the 100-day period, the trial court conducted a "follow-up" hearing at which it heard evidence of how the children had responded to the change of custody, and, based on that evidence, it awarded "permanent" custody to the father. On appeal, this court reversed the judgment, stating:
"The supreme court's holding in Ex parte McLendon[, 455 So.2d 863 (Ala. 1984),] does not allow a trial court to modify custody on a trial basis or, as the mother argues occurred in this case, allow the trial court to experiment with an award of custody. We conclude that, under the facts of this case, the presumption favoring the mother as the custodial parent as stated in Ex parte McLendon eroded after the trial court entered its June 4, 2003, pendente lite order and allowed the father to return to court to present evidence that was based on the 100 days the children were in his custody in support of his contention that he was the more suitable parent to have custody. Accordingly, we must conclude that the June 4, 2003, order of the trial court impermissibly shifted the burden of meeting the McLendon standard to the mother. Accordingly, the judgment of the trial court is reversed."
897 So.2d at 1155.
Based primarily on Barber, this court in C.D.K.S. reversed a judgment awarding custody of a child to his father following the entry of an earlier pendente lite order that had transferred custody to the father for "`a trial period.'" 40 So.3d at 746. This court held that the trial court had erred in experimenting with the custody of the child and that, on remand, the trial court could not consider any evidence of the circumstances occurring during the trial period. Id.
Both Barber and C.D.K.S. concern the impermissible use of pendente lite orders by a trial court to assist in gathering evidence regarding the effects of a change of custody on a child. This court has held that custody may not be changed on a pendente lite basis solely to experiment with custody, and, as a means of enforcing that holding, this court, in Barber and C.D.K.S., concluded that any evidence produced as a result of such an impermissible pendente lite order shall not be considered in deciding whether the noncustodial parent has met the McLendon standard. In this case, the trial court did not change custody on a pendente lite basis merely to determine how the children would react to such a change; rather, it did so in order to provide the children with a parental custodian during the father's military assignment to Iraq. Therefore, the entire basis for our holdings in Barber and C.D.K.S. is absent.
In dissenting to the instructions on remand, Judge Thomas argues that this court should instruct the trial court on remand to exclude from its consideration any evidence of the circumstances occurring while the mother exercised pendente lite custody of the children. Judge Thomas asserts that it would be inequitable to the father to consider those circumstances because the father had temporarily lost custody of the children based solely on his military assignment. 60 So.3d at 920 (Thomas, J., concurring in the result but dissenting as to the instructions on remand). We reject that position for at least two reasons.
First and foremost,
"[in] all [child-custody] proceedings the question of custody rests at last upon the determination of wherein lies the best interest of the children, the conflicting parental rights being secondary in importance."
*919 Ex parte Ingalls, 256 Ala. 305, 309, 54 So.2d 288, 291 (1951). In this case, the trial court explicitly found that the parties' son had developed mental-health problems before the father's assignment to Iraq. The trial court also concluded that the parties' son, while living with the mother pursuant to the pendente lite order, underwent treatment designed to address the son's mental-health issues. As a result of that intervention, according to the evidence presented by the mother and the express findings of the trial court, the son had overcome his mental-health issues and had become a friendly, well-adjusted child with an improved level of self-esteem. The trial court further heard evidence from which it could have reasonably determined, as it did, that the son's recovery would be imperiled if he were removed from the mother's custody and returned to the father's custody in New York. To prevent the trial court from considering the foregoing evidence would essentially compel the trial court to overlook the impact a change of custody to the mother would have on the mental and emotional welfare of the parties' son. An order excluding evidence of the circumstances occurring during the mother's exercise of pendente lite custody definitely would not serve the best interests of the children.
Secondly, the father does not argue the point raised in the dissent. See note 1, supra. Perhaps recognizing that the paramount consideration is the best interests of the children, and not his parental rights, the father does not assert on appeal that it would be unfair to him for the trial court to consider evidence existing solely because of his military assignment. Rather, the father argues that the trial court should not consider that evidence because it would conflict with our holdings in Barber and C.D.K.S. and impermissibly relieve the mother of her burden of proving the McLendon standard, a standard enunciated for the benefit of the children. As pointed out above, it would not benefit the children to exclude evidence as to the emotional welfare of the son simply because consideration of such evidence exists as a result of the father's military assignment. "It is not the function of an appellate court to advocate a position on behalf of an appellant." J.B. v. Cleburne County Dep't of Human Res., 992 So.2d 34, 42 (Ala.Civ. App.2008). Thus, we are not permitted to even consider the point raised by the dissent as a ground for reversing the trial court's judgment.
Based upon our disposition, we pretermit consideration of the father's remaining arguments.
Both the father's and the mother's requests for the award of attorney's fees on appeal are denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
BRYAN, J., concurs in part and concurs in the result, with writing.
THOMPSON, P.J., concurs in the result, without writing.
THOMAS, J., concurs in the result but dissents as to the instructions on remand, with writing, which PITTMAN, J., joins.
BRYAN, Judge, concurring in part and concurring in the result.
I concur with the main opinion's analysis of the father's Rule 10(d), Ala. R.App. P., argument, and I concur with the main opinion insofar as it concludes that the trial court erroneously "absolv[ed] the mother of her burden of proving that the positive good brought about by changing custody to her outweighs the disruptive effects of removing the children from the custody of the father." 60 So.3d at 917.
I agree with Judge Thomas's special writing to the extent that the father, as an active-duty member of the United States *920 Army, should not be punished by having custody of the children modified solely because of his deployment to Iraq. However, in this particular case, circumstances existed before the father's deployment to Iraq that could have served as a basis for a change in custody even if the father had not been deployed. The mother presented evidence indicating that she had addressed those issues, which were not connected to the father's deployment, while the children were in her custody. Because of the unique procedural and factual circumstances of this case, I think a full consideration of the best interests of the children is possible only by considering the evidence that accumulated both before and after the mother was awarded pendente lite custody of the children. See Tims v. Tims, 519 So.2d 558, 559 (Ala.Civ.App.1987) ("The best interests of the child are always of paramount importance in child custody cases."). Nonetheless, the mother is still required to meet the burden set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984); thus, she must demonstrate that a material change in circumstances (other than the father's deployment) has occurred since the entry of the last custody determination, that the change in custody materially promotes the best interests of the children, and that the positive good brought about by the change in custody would more than offset the disruptive effect of removing the children from the father's custody.
THOMAS, Judge, concurring in the result but dissenting as to the instructions on remand.
I concur with the main opinion that the trial court erred when it focused on the period during which the mother had pendente lite custody of the children when it considered the disruptive effect of transferring custody of the children from the father to the mother. I dissent, however, from the main opinion insofar as it holds that, on remand, the trial court can consider the circumstances surrounding the mother's custody of the children pursuant to the pendente lite award.
The mother was awarded pendente lite custody of the children while the father, who was an active-duty member of the United States Army, was deployed to Iraq; the father's military deployment served as the basis for the trial court's pendente lite custody order. Allowing the trial court to use the circumstances surrounding the mother's pendente lite custody of the children while the father was deployed oversees would disadvantage the father solely because of his military servicea result that I find inequitable. Thus, I would instruct the trial court on remand to exclude the evidence from the period when the mother was exercising pendente lite custody of the children.
The main opinion holds that, because the father did not argue that the trial court could not consider the circumstances surrounding the mother's pendente lite custody of the children because it would be inequitable to the father, "we are not permitted to even consider the point raised by the dissent as a ground for reversing the trial court's judgment." 60 So.3d at 919. However, I do not raise this argument as an alternate basis for reversing the trial court's judgment; I raise it only as a clarification of what action the trial court should take on remand. This court is not always limited strictly to the precise legal arguments of the appellant in crafting our instructions on remand. See, e.g., Self v. Self, 685 So.2d 732, 736 (Ala.Civ.App.1996) (instructing the trial court on remand to take the father's expenditures for medical bills or insurance into consideration when fashioning its award of child support, as required by Rule 32(C), Ala. R. Jud. Admin., despite the lack of any mention that an argument concerning that specific issue *921 was raised). Indeed, following the logic of the main opinion, this court would be constrained to expressly instruct the trial court to take an action that we know to be in error because the fatherthe appellant in this casedid not make a specific legal argument concerning that issue.
Moreover, I do not agree that the father did not sufficiently raise the argument in his brief to this court. The sum and substance of the father's argument concerning this issue is that the trial court had improperly considered the circumstances surrounding the mother's pendente lite custody of the children, as part of his broader argument that the trial court had improperly relieved the mother of proving her burden under Ex parte McLendon, 455 So.2d 863 (Ala.1984) The main opinion would narrow that argument to the specific cases cited and whether the pendente lite order awarded a trial custody period, without any consideration of the surrounding equities of the case. I find this approach excessively narrow.
NOTES
[1] At the trial-court level, the father maintained that, because the mother had gained custody of the children solely on the basis of his military assignment to Iraq, their custody should automatically be returned to him once that assignment ended. However, the father does not make that argument on appeal. Hence, we consider that issue waived, and we do not address whether a custodial parent's call to active military duty constitutes a material change of circumstances that would support a change of custody or whether a custodial parent's return from active military duty requires a return to the prior custody arrangement. We note, however, that, at the 2010 Regular Session of the Alabama Legislature, HB-408 was introduced; although that bill did not pass, it would have maintained custody in a parent called to active duty in the military.