THOMAS, Judge.
Christopher Hadley (“the father”) and Tracey Lynn Hadley (“the mother”) are the parents of three children—Corey, born on December 7, 1995; Meghan, born on December 27, 1996; and Kaitlyn, born on May 23, 1999.[1] Kaitlyn has been diagnosed with autism. In January 2004 the parents were divorced by a judgment of the Chancery Court of Shelby County, Tennessee (“the Tennessee Court”), after a lengthy separation during which Corey, Meghan, and Kaitlyn lived in Alabama with James Spears and his wife, Sherry *701 Spears, who are the children’s maternal grandparents. In April 2004, the Tennessee court amended its judgment to incorporate the parties’ “permanent parenting plan” regarding “all matters having to do with [Corey, Meghan, and Kaitlyn].” Among other things, the permanent parenting plan provided that the father’s residence was Corey, Meghan, and Kaitlyn’s “primary residence”; that the father was the “day to day decision maker” regarding Corey, Meghan, and Kaitlyn but that the parents were to make decisions regarding Corey, Meghan, and Kaitlyn’s education, health, religious instruction, and extracurricular activities jointly; that the mother was entitled to “standard” visitation; and that the mother would pay $440 per month in child support.
In the meantime, on February 11, 2004, the mother gave birth to a son, Gabriel Andrew Spears. The father is riot Gabriel’s biological father; however, under Alabama law, he is Gabriel’s presumed father. See § 26-17-204(a)(2), Ala.Code 1975 (“A man is presumed to be the father of a child if ... he and the mother of the child were married to each other and the child is born within 300 days after, the marriage is terminated by ... divorce.”). In 2004, the father relocated to Alabama; Corey, Meghan, and Kaitlyn lived with the father. Approximately one month after the father relocated, the mother and Gabriel relocated to Alabama. Although the parties never remarried one another, they lived together with Corey, Meghan, Kait-lyn, and Gabriel (hereinafter referred to collectively as “the children”). No custody order regarding Gabriel existed at that time.
On July 2, 2008, the parties registered an “agreement of the parties regarding the enrollment of Foreign Judgment Act and amendment” (“the registered agreement”) in the Baldwin Circuit Court (“the circuit court”).[2] The parties agree that the circuit court adopted the Tennessee court’s April 2004 custody order regarding Corey, Meghan, and Kaitlyn and a provision regarding Gabriels custody in the registered agreement. The registered agreement provided, in pertinent part:
“Paternity: [The father] is adjudicated •the father of Gabriel Andrew Spears, and shall have the right to change the birth certificate of said minor child to reflect paternity and change minor child’s name, to Gabriel Andrew Spears Hadley.
[[Image here]]
“The parties shall have joint legal custody of Gabriel Andrew Spears.”
In 2011 the mother moved out of the residence she had shared with the father and the children. In 2013 the father notified the mother that he intended to relocate the children to Missouri,[3] and, on February 28, 2013, the mother filed in the circuit court an objection to the proposed relocation and a petition seeking an award of sole custody of the children or an order designating her as the children’s “primary residential” custodian. The father filed a motion[1] to dismiss the mother’s petition, which the circuit court denied. On March 1, 2013, the circuit court entered an order forbidding the removal of the children from Baldwin County pending the resolution of the litigation.
On May 1, 2013, the father filed an answer to the mother’s custody petition *702 and a counterclaim in which he requested, among other things, a finding of contempt against the mother and an award of a child-support arrearage.- A hearing was held on May 3, 2013. On May 13, 2013, the circuit court, entered a temporary order, which reads, in pertinent part:
“The custodial arrangement shall remain the same with the parties hav[ing] joint legal custody of the minor children ... with father having primary physical custody.”
The mother filed a motion seeking a correction of the temporary order in which she argued that neither the Tennessee court’s April 2004 judgment nor the registered agreement had awarded the father “primary” physical custody of Gabriel; thus, the mother argued, the circuit court’s temporary order conflicted with previous orders and was incorrect regarding Gabriel. After a hearing on the mother’s motion, the circuit court amended the temporary order to award the parents joint custody of Gabriel. See § 30-3-151(1), Ala.Code 1975.
In the meantime, on May 29, 2013, the mother filed an emergency motion in which she asserted that the father had committed an act of domestic violence against her in the presence of the children, that he had physically abused Corey, that he had alienated Meghan from her, and that he had refused to allow her to exercise visitation with the children. The mother requested, among other things, a protection-from-abuse order, a finding of contempt against the father, and an order requiring the father to submit to domestic-abuse counseling. After a hearing, the circuit court entered an order in which it found the father in contempt, ordered the father to allow the children to make up five days of visitation with the mother, and ordered the father to pay the mother’s attorney fees. The parties continued to display a lack of cooperation, and various motions and responses were filed by the parties.
On December 6, 2013, the mother filed an emergency motion seeking an order allowing Corey to live with her and seeking a restraining order based upon her assertion that the father had committed an act of domestic violence against Corey. Corey filed an affidavit in which he testified that the father had injured him “on multiple occasions” and that the Baldwin County Department of Human Resources (“DHR”) had become involved with the family as a result of the father’s violence against him. DHR arranged for Corey to live with Shane Hadley, the father’s cousin (“the cousin”), and his wife, Melissa Had-ley, until the circuit court entered an order on the mother’s motion.
On December 19, 2013, a hearing was held. The resulting order, as modified, noted that the parties had entered into an agreement that had resolved several of the parties’ pending motions. Among other things, the circuit court allowed Corey to remain with the cousin until he moved away to attend college in January 2014. The circuit court required the mother and Meghan to continue to participate in counseling together, and it allowed the mother to exercise visitation with Meghan upon the recommendation of the counselor. Thereafter, the parties again remained uncooperative and continued to file various amendments, motions, and responses.[4]
After the January 26, 2015, custody trial, the circuit court entered a final judgment (“the 2015 judgment”) on February *703 18, 2015. As already mentioned, see note 1, supra, by that time Corey had reached the age of majority and the circuit court appropriately concluded that Corey could not be the subject of a custody order, and, although custody of Meghan was awarded to the father, during the pendency of this appeal Meghan reached the age of majority; thus, we need not fully evaluate Meghan’s custody to resolve the issues in this appeal.
Without specifically indicating whether its award was one of joint or sole custody, the circuit court awarded “legal and physical custody” of Kaitlyn to the father and désignated him as the “primary decision maker” for Kaitlyn after evaluating the evidence presented under the standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984) (“the McLendon standard”)(discussed infra). Again, without specifically indicating whether its custody award was one of joint or sole custody, the circuit court awarded “legal and physical custody” of Gabriel to the mother and designated her as the “primary decision maker” for Gabriel after evaluating the evidence presented under the best-interests standard set forth in Ex parte Couch, 521 So.2d 987 (Ala.1988). The circuit court’s order regarding visitation reads, in pertinent part:
“As to the- parenting time ■ of Kaitlyn Hadley and Gabriel Hadley, Father and Mother are to have each respective child during the regular school week and then thereafter are to set it up so they alternate weekends with both children being in the same home at the same time on the weekend. The first weekend after this order is entered, Mother shall begin her weekend visitation with both Gabriel and Kaitlyn by getting both children on Friday after school and returning them both to their school on Monday. During the normal week there shall be no overnight Wednesday visitation as otherwise set forth in Schedule A.”
The circuit court calculated the parties’ child-support obligations based upon the father’s award of custody of two children (Meghan and Kaitlyn) and the mother’s award of custody of one child (Gabriel). It imputed an annual income to the father and a monthly income to the mother, and it credited the father for the expense of procuring the children’s medical insurance. It ordered the father to pay the mother $294 per month in child support; however, the father’s obligation was offset by the mother’s child-support arrearage. The circuit court concluded that the mother had not met her previously ordered child-support obligation for 39 months, and it ordered the mother to pay the father a child-support arrearage of $17,160. The circuit court also ordered the mother to reimburse the father $5,255.45- for her share of the children’s uncovered medical expenses.
On February 23, 2015, the father filed a motion to alter, amend, or vacate the judgment in which he argued that the circuit court’s judgment failed to serve the best interests of Kaitlyn and Gabriel because the custody arrangement had separated those siblings and had caused Gabriel to change schools. He requested an award of physical custody of Gabriel., On March 13, 2015, the mother filed a response to the father’s postjudgment motion in which she pointed out that the circuit court’s judgment had provided that Kaitlyn and Gabriel would spend every weekend together and that, regardless of which parent had custody of him, Gabriel would change from elementary school to middle- school in the fall. On March 20, 2015, the circuit court denied the father’s postjudgment motion. On April 28, 2015, the father filed a timely notice of appeal. *704 On May 12, 2015, the mother filed a timely cross-appeal.
“ ‘It is well settled that when a trial court receives ore tenus evidence in a child-custody-modification proceeding and bases its judgment on its findings of fact, that judgment will not be reversed absent an abuse of discretion or a showing that the findings are plainly and palpably wrong. Smith v. Smith, 865 So.2d 1207, 1209 (Ala.Civ. App.2003). See also West v. Rambo, 786 So.2d 1138, 1140 (Ala.Civ.App. 2000). A judgment based on ore ten-us evidence is presumed to be correct and will be affirmed if supported by competent evidence. N.G. v. L.A., 790 So.2d 262, 265 (Ala.Civ.App.2001). The trial court’s opportunity to observe witnesses is especially important in child-custody cases because the trial court is in the unique position to directly observe the witnesses and to assess their demeanor and credibility. Fell v. Fell, 869 So.2d 486, 494 (Ala. Civ.App.2003). However, when this court is presented with an issue of law, we review the judgment of the trial court de novo, without affording it any presumption of correctness. See Barber v. Moore, 897 So.2d 1150, 1153 (Ala.Civ.App.2004).’
“Patrick v. Williams, 952 So.2d 1131, 1137-38 (Ala.Civ.App.2006). The ore tenus rule does not cloak with a presumption of correctness a trial court’s incorrect application of law to the facts. Hartin v. Hartin, 171 So.3d 45, 47 (Ala. Civ.App.2015).”
Ingram v. Matthews, 186 So.3d 465, 470-71 (Ala.Civ.App.2015).

The Mother’s Cross-Appeal

The mother seeks our review of whether the circuit court erred by failing to award custody of Kaitlyn to her, because, according to the mother’s issue statement, the circuit court should have applied the best-interests standard regarding Kaitlyn’s custody because, she says, Kaitlyn’s “custody had not been previously determined.” However, in the argument section of her brief to this court the mother does not argue that Kaitlyn’s custody had not been previously determined, and the record demonstrates that Kaitlyn’s custody had been previously determined. In its May 13, 2013, temporary order, the circuit court referred to the previous award of joint legal custody of Kaitlyn and to the previous award to the father of “primary physical custody” of Kaitlyn. Because the mother sought a change in Kaitlyn’s physical custody, the circuit court was required to apply the McLendon standard. See, Broadway v. Broadway, 184 So.3d 376, 383 . (Ala.Civ.App.2014) (citing P.A.T. v. K.T.G., 749 So.2d 454, 456 (Ala.Civ.App.1999))(applying the McLen-don standard to custody-modification case where the parents shared joint legal custody and one of the parents had primary physical custody of the child). Therefore, we conclude that the circuit court did not err by considering the evidence presented regarding Kaitlyn’s custody under the McLendon standard.
In the alternative, the mother contends that she presented evidence-sufficient to meet the McLendon standard regarding Kaitlyn’s custody. The McLen-don standard requires- that, when physical custody of a child has been removed from a parent by prior court order, in order to modify custody, the parent requesting the modification must demonstrate that the proposed “ ‘change of ... custody will materially promote [the] child’s welfare,’ ” 455 So.2d at 865 (quoting Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947)), and that the “ ‘positive good brought about by the modification’ ” would “ ‘more than offset the inherently disruptive effect *705 caused by uprooting the child.’ ” Id. (quoting Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ.App.1976)), In support of her argument, the mother lists evidence presented to the circuit court demonstrating that the father was fired from his employment, that he had interfered with her visitation, that he was a poor father to Corey, that he did not attend church, and that he failed to communicate with the mother. The circuit-court judge orally explained the reasons why she decided to award the father sole legal and physical custody of Kaitlyn.
“I am going to place legal and physical custody of Kaitlyn with her father. All of the things that we say about dad, that he is a stickler for detail, that he’s highly structured, that he is even rigid is exactly what an autistic child needs. And he will have the legal and physical custody of that child and that means he’s the decision maker for that child to the extent that I have not ordered things to be a certain way, okay?”
Therefore, regardless of the other evidence presented by the mother, we conclude that the circuit court did not err by determining that the mother had failed to present sufficient evidence demonstrating that a change of physical custody would materially promote Kaitlyn’s best interests and welfare in light of the evidence presented regarding the father’s ability to parent an autistic child. See Ex parte McLendon, 455 So.2d at 866.
Finally, the mother makes a brief argument that she “presented substantial evidence that she had given well over the amount ordered for child support” from 2004 through 2011 and that the circuit court erred by failing to credit her for those financial contributions; however, the mother admitted that she was obligated to pay child support and that she had never done so.
“It is well settled that child-support obligations' become final judgments on the date due and that it is beyond the trial court’s power to forgive an accrued arrearage. State ex rel. McDaniel v. Miller, 659 So.2d 640 (Ala.Civ.App.1995). The award or denial of a credit against an arrearage is within the sound discretion of the trial court and will not be reversed absent a showing of plain and palpable abuse. Brewer v. Brewer, 613 So.2d 1292 (Ala.Civ.App.1992). When the trial court receives ore tenus evidence, a presumption of correctness attaches to its determination of factual issues, and that determination will not be disturbed on appeal unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Id. A party may not reduce child-support payments without the consent of the court. Phillippi v. State ex rel. Burke, 589 So.2d 1303 (Ala.Civ.App.1991). Further, a party seeking credits against a child-support arrearage must present proof pertaining to the monetary amount of the credits sought. Id.”
Ullrich v. Ullrich, 736 So.2d 639, 642 (Ala. Civ.App.1999). The mother offered testimony and an exhibit intended to demonstrate that, although she had accrued a child-support arrearage of $46,200, she had contributed the total amount of $81,474.87 to the household from November 2008 through September 2011 for which she sought a “credit.” She testified that during those years her employment income was deposited into the parties’ joint banking account, that the father had transferred sums from that account into his separate account, and that sums in the joint account and in the father’s separate account were used to pay household bills. The mother was unable to testify regarding what portion of the $81,474.87 contribution was for the specific benefit of the *706 children rather than her own living expenses, and the father disputed the testimony presented by the mother. The circuit court calculated the arrearage by multiplying $440, the monthly amount the mother was ordered to pay by the Tennessee court, by 39 months, the number of months that had elapsed between the time the mother left the parties’ residence and the trial of this matter, and it awarded the father $17,160, which did not include interest.[5]
The circuit-court judge stated orally:
“I am going to award a child support judgment for unpaid child support and I am going to do something neither one of y’all want and I’m just going to go ahead and tell you up front. I am going to award a child support judgment ... from September of 2011 through December of 2014, although I typically do not do that. I have heard evidence upon evidence, upon evidence, and even an offered stipulation that that would be the preferred method and I’m going to doit. It is $17,160.”
Therefore, because the determination of the amount of a child-support arrearage was within the sound discretion of the circuit court and because we do not perceive that the circuit court’s determination was clearly erroneous based upon the disputed evidence presented, we affirm the judgment of the circuit court as to this issue.

The Father’s Appeal

The father seeks our review of whether the circuit court erred by separating siblings without finding a “compelling reason to do so.” As the mother points out, under former caselaw, a compelling reason was required when a trial court entered a custody order separating siblings. See A.B. v. J.B., 40 So.3d 723, 729 (Ala.Civ.App.2009) (rejecting the compelling-reason requirement and explaining that “our caselaw more accurately holds that siblings may be separated if the trial court concludes, based on sufficient evidence in the record, that the separation will serve the best interests of the children at issue”); see also Stocks v. Stocks, 49 So.3d 1220, 1232 (Ala.Civ.App.2010). Review of the issue of separating siblings in this case is somewhat muddled by the fact that the circuit court was required to evaluate the evidence presented regarding Kaitlyn’s custody under the McLendon standard and the evidence presented regarding Gabriel’s custody under the best-interests standard. As already explained, the circuit court determined that Kaitlyn’s physical custody should remain with the father under the McLendon standard. Accordingly, the only way to avoid separating the siblings would be to award physical custody of Gabriel to the father; however, because the circuit court determined that an award of Gabriel’s physical custody to the father was not in Gabriel’s best interests, separation of the siblings was unavoidable in this case. We conclude that the circuit court did not err by separating the siblings in light of the differing standards of proof required based on the previous custody determinations regarding Kaitlyn and Gabriel and the evidence regarding their best interests.
In conclusion, in the father’s appeal, sufficient evidence supports the circuit court’s conclusion that separating Kaitlyn and Gabriel will serve their best interests. In the mother’s cross-appeal, the circuit court did *707 not err by evaluating the evidence presented regarding Kaitlyn under the McLendon standard, by concluding that the mother had not met the requirements for a change of Kaitlyn’s physical custody under the McLendon standard, or by declining to apply a credit to the mother’s child-support arrearage for her alleged past contributions to the household. Accordingly, the circuit court’s judgment is affirmed.
APPEAL—AFFIRMED.
CROSS-APPEAL—AFFIRMED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

, Corey reached the age of majority before the February 18, 2015, custody order at issue in this appeal was entered; Meghan reached the age of majority during the pendency of this appeal. Therefore, we do not address any issues of custody regarding Corey or Meghan.

. See Alabama Uniform Interstate Family Support Act, codified at § 30-3A-101 et seq., Ala.Code 1975.

. There was a dispute regarding the propriety of the notification; however, by the time of the custody trial, the father no longer intended to relocate; thus, the relocation issue is not a subject of this appeal.

. The mother filed a motion seeking to incorporate all the testimony presented in all previous hearings, which the circuit court granted; thus, the record contains the transcripts of seven hearings.

. Apparently the mother's estimate of her child-support arrearage—$46,200—was calculated based upon the mother’s failure to pay child support from 2004 through December 2014, the month preceding the custody trial. The father neither requested our review of the child-support-arrearage award nor requested an award that would include interest.